**Alexandria**

WILLIAM JOHN OWEN

v.

MARGARET OWEN

No. 0453-91-4

Decided June 9, 1992

COUNSEL

Michael J. Weiser, for appellant.

Ann W. Mische (Byrd, Mische, McKechnie, Bevis and Brown, on brief), for appellee.

OPINION

DUFF, J.—William John Owen (husband) appeals from a February 21, 1991, equitable distribution ruling that ordered him to pay to Margaret Owen (wife) a monthly sum of $1,241.47. This amount is equal to one-half of the husband's gross retirement pay based on twenty-five years of Army service, without any diminution for disability pay. Husband contends: (1) that federal law preempts an agreement obligating him to indemnify the wife for a loss of military retirement benefits; and (2) that the trial court erred in its interpretation of the parties' November 15, 1988 property settlement agreement. We disagree with both arguments and affirm the decision of the trial court.

William and Margaret Owen were married on June 15, 1963. They separated on September 19, 1987, by mutual agreement. Husband was on active duty with the United States Army for twenty-five years prior to the separation date. On November 15, 1988, the parties entered into a property settlement agreement

(hereinafter "PSA"). Paragraph 4A of the PSA states in relevant part that "[u]pon the Husband's retirement from the United States Army, . . . the Wife shall receive one-half of his Army gross retirement pay based on twenty-five years of Army service, subject only to any deductions for federal and state taxes required with respect to the Wife's share of said pension." Paragraph 4A also provides that husband will take no action to defeat his wife's right to share in these benefits, and that he will indemnify her for any breach by him in this regard. A final divorce decree was entered on January 20, 1989, after which the husband retired and applied to the Department of Veteran Affairs for a disability determination.

On March 8, 1990, the trial court determined that paragraph 4A of the PSA entitled the wife to receive one-half of the husband's gross retirement pay based on twenty-five years of Army service. After decreasing the husband's pension amount by one-half of the tax liability, the trial court decreed that husband should pay the wife a sum of $1,241.47 per month as he receives his pension.

On June 29, 1990, husband was awarded a 60% disability compensation benefit according to a determination of service-connected disabilities. Husband notified the wife that he was modifying his payments to her to reflect the corresponding decrease in his retirement benefits. Wife responded by requesting the trial court for an interpretation of paragraph 4A of the PSA and an order compelling husband to pay her one-half of his military pension without reduction for disability pay.

By decree of February 21, 1991, the trial court ordered husband to pay wife the relief sought.

I.

Husband contends that federal law preempts state law in the area of federal military disability benefits, and that the trial court, therefore, had no power to order a division of the husband's benefits in this case.

"Federal courts repeatedly have declined to assert jurisdiction over divorces that presented no federal question." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979). In 1979, the United States Supreme Court held that "[s]tate family and family-prop-

erty law must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." *Hisquierdo*, 439 U.S. at 581 (citing *United States v. Yazell*, 382 U.S. 341, 352 (1966)). Following *Hisquierdo*, the Supreme Court held that federal law preempted state court division of military retirement pay. *McCarty v. McCarty*, 453 U.S. 210, 232 (1981). In response to the *McCarty* decision, Congress passed the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (hereinafter "the Act"). In 1989, the Supreme Court interpreted the Act as granting state courts the power to divide military retirement pay, but specifically held that the Act does not grant state courts the power to divide military retirement pay that has been waived to receive veterans' disability benefits. *Mansell v. Mansell*, 490 U.S. 581, 594-95 (1989).

This Court applied the *Mansell* ruling in *Lambert v. Lambert*, 10 Va. App. 623, 395 S.E.2d 207 (1990), stating that "*Mansell* firmly established the principle that [the Act] preempts the application of state community property or equitable distribution laws to military retirement pay that is waived by a retiree in order to receive veterans' disability benefits." *Id.* at 627, 395 S.E.2d at 209. This Court went on to hold that "[w]hen military disability benefits are received in lieu of retirement pay, or veterans' disability benefits administered by the V.A. are received according to the required waiver of an equal amount of military retirement pay, the benefits are not subject to division by the state courts under the Act." *Id.*

The wife concedes that federal law prohibits former military personnel from assigning military disability pay by property settlement agreement, and that it prohibits state courts from considering military disability in a division of assets in divorce proceedings. However, the issue in this case is quite different. The question here is whether parties may use a property settlement agreement to guarantee a certain level of income by providing for alternative payments to compensate for a reduction in payment level based on a reduction in retirement benefits. We hold that they may. Such an arrangement does not offend the federal prohibition against a direct assignment of military disability pay by property settlement agreement.

Paragraph 4 of the PSA provided for spousal support until the husband retired from the U.S. Army. Paragraph 4A, entitled

"Retirement," provided that the wife would receive one-half of the husband's gross military retirement pay based on twenty-five years of service, including cost-of-living increases. Paragraph 4A also contains the following provision:

Husband guarantees to the Wife that he shall not merge his military and any possible future government pension, nor take any action so as to defeat the Wife's right to share in the monthly retirement benefits as set forth in this Agreement. Husband guarantees this and agrees to indemnify against any breach by him and agrees to hold her harmless against any such breach.

Paragraph 4A does not purport to assign military disability benefits to the wife. Rather, it insures the wife a steady or possibly increasing monthly payment in return for her waiver of the right to receive spousal support once the husband retired. The husband specifically promised to take no action to reduce this monthly payment. If he breached this covenant, paragraph 4A provides that he will make up the difference from his own pocket. No source of funds is specified for this indemnification.

This Court addressed a similar situation in *Holmes v. Holmes*, 7 Va. App. 472, 375 S.E.2d 387 (1988), *cert. denied*, 493 U.S. 852 (1989). There, the husband contended that the monthly spousal support award exceeded his non-disability income and, therefore, necessitated an invasion of his disability funds, which were exempt from court division. This Court noted that "[t]he judge did not specify that the payments had to come from the husband's excluded disability benefits. Contrary to the husband's contention, the source of the payments need not come from his exempt disability pay; the husband is free to satisfy his obligations to his former wife by using other available assets." *Holmes*, 7 Va. App. at 485, 375 S.E.2d at 394-95. Furthermore, we concluded that the trial court could properly consider military disability benefits in determining the amount of a spousal support award. *Id.* at 485, 375 S.E.2d at 394-95; *see also Lambert v. Lambert*, 10 Va. App. 623, 628, 395 S.E.2d 207, 210 (1990). If the wife's retirement income decreases because the husband receives disability pay in lieu of retirement, the court may consider this reduction in determining its award and may provide for an alternative payment as compensation for the wife's loss.

The guarantee/indemnification clause of the PSA constitutes consideration for the wife's agreement to waive spousal support. If this clause were found to be invalid, the consideration would fail, and we would be obliged to remand this cause for further proceedings to determine spousal support. Another jurisdiction has addressed this very issue. In *McMahan v. McMahan*, 567 So. 2d 976, 979-80 (Fla. Dist. Ct. App. 1990), after a lower court awarded the wife a portion of her husband's disability benefits, the Florida Court of Appeals reversed the decision pursuant to *Mansell*. However, the court held that "because the parties reasonably contemplated, at the time they executed the document, that their agreements would be judicially honored" the matter would have to be remanded to the trial court to "reconsider the *entire* equitable distribution scheme. . . ." *McMahan*, 567 So. 2d at 979-980.

█ We hold that federal law does not prevent a husband and wife from entering into an agreement to provide a set level of payments, the amount of which is determined by considering disability benefits as well as retirement benefits.

## II.

Husband contends that the PSA entitles the wife only to one-half of his military pension, whatever that may be. He argues that paragraph 4A specifically states that "the wife shall receive one-half of his Army gross retirement pay based on twenty-five (25) years of Army service." Husband argues that his application for disability benefits was not an action to defeat wife's interest in his retirement benefits because he continued to pay her a proportional share of his retirement benefits as agreed in the PSA and as ordered by the court on May 7, 1990. We disagree.

The trial court correctly found that the guarantee/indemnification clause created a separate agreement between the parties to maintain a certain level of payments to the wife. The husband acknowledged that he had no disability rating at the time the agreement was signed. The parties had agreed that the payments would correspond to a pension reflecting twenty-five years of military service. Husband's minimum payment amount could be calculated by reference to 10 U.S.C. § 1408. The lengthy provisions of the PSA preventing a conversion of retirement benefits to nondivisible assets show the parties' clear intent to maintain a stable payment level. If we adopted the husband's interpretation of the

guarantee language, the guarantee would be rendered virtually meaningless, due to potentially large-scale conversion of retirement benefits to disability benefits. Conceivably, husband's disability payments could eliminate completely the wife's benefits. Such a result is irrational and does not comport with the clear intent expressed by the language of the PSA.

The trial court correctly found that the parties entered into an agreement to insure that the wife would receive a certain level of payment after the husband retired. The court further found that their agreement was not an agreement to divide disability pay. Under the circumstances, federal law is not violated. The indemnification clause of the agreement is valid and will be upheld.

Accordingly, the ruling of the trial court is affirmed in all respects.

*Affirmed.*

Barrow, J., and Coleman, J., concurred.