1996 SD 122

**Marilyn HISGEN, Plaintiff and Appellee,**

v.

**Richard M. HISGEN, Defendant and Appellant.**

No. 19394.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1996.

Reassigned July 31, 1996.

Decided Oct. 9, 1996.

James J. Doyle of Doyle and Doyle, Rapid City, for plaintiff and appellee.

Ronald R. Kappelman, Rapid City, for defendant and appellant.

KONENKAMP, Justice (on reassignment).

[¶ 1] Richard Hisgen appeals an order requiring him to pay his former spouse, Marilyn Hisgen, a monthly sum equal to fifty percent of his gross military retirement entitlement, calculated without deducting his disability retirement pay. Based upon the phrasing of their divorce settlement agreement, we affirm.

## BACKGROUND

[¶ 2] Marilyn and Richard were divorced on July 26, 1993, after entering a stipulation, child custody and property settlement agreement. During negotiations, both parties were aware Richard was applying for military disability benefits. Paragraph 14 of their stipulation provided:

> [Richard] will instruct the Air Force Accounting and Finance (AFA & F) to pay [Marilyn] one-half (½) of his gross annuity payments (prior to any reductions for disability payments or any other deductions) per month beginning August 1, 1993. This payment shall be made by direct deposit or check at the option of [Marilyn], with the AFA & F deducting full survivor's benefit annuity payments, if available, for such deduction from [Marilyn's] check. [Richard] shall also instruct AFA & F to provide [Marilyn] with an annual 1099 for such division of annuity payments.

At the time of this agreement, Marilyn's one-half share was $394.50 per month. The stipulation plainly treated Richard's retirement pay as property subject to division. After the divorce decree was entered, the Veteran's Administration granted Richard disability benefits. To receive them, Richard waived an equal amount of his military retirement pay. In turn, Marilyn's monthly payment decreased to $50.

[¶ 3] Marilyn sought the balance from the VA, but she was unsuccessful in collecting ongoing payments because federal law prohibits an award of military disability retire-

ment as part of a property division. She sought relief in circuit court. In its memorandum opinion, the court interpreted the parties' stipulation to mean that Marilyn was entitled to an amount equal to one-half of Richard's total gross annuity, before any reduction for disability payments. Accordingly, an order was filed September 7, 1995. Richard appeals. We consider whether a court may require a former spouse to pay as part of a property division an amount equivalent to one-half of a military retirement entitlement when such spouse has waived retirement benefits to receive a corresponding sum in veteran's disability payments.

## DISCUSSION

[¶ 4] Divorce stipulations are governed by the rules of contract; their interpretation is a matter of law for the courts to decide. *Houser v. Houser*, 535 N.W.2d 882, 884 (S.D.1995). In *Malcolm v. Malcolm*, 365 N.W.2d 863, 865 (S.D.1985) (quoting *Huffman v. Shevlin*, 76 S.D. 84, 89, 72 N.W.2d 852, 855 (1955)), we set forth the procedure for analyzing a property settlement agreement:

> First, in determining the proper interpretation of a contract the court must seek to ascertain and give effect to the intention of the parties. *Chord v. Pacer Corp.*, 326 N.W.2d 224 (S.D.1982); *Johnson v. Johnson*, 291 N.W.2d 776 (S.D.1980); *Huffman v. Shevlin*, 76 S.D. 84, 72 N.W.2d 852 (1955). In determining the intention of the parties, a court must look to the language that the parties used. *Johnson v. Johnson, supra; Berry v. Benner*, 81 S.D. 610, 139 N.W.2d 285 (1966).
>
> \* \* \* \* \* \*
>
> If the intention of the parties is not clear from the writing, then it is necessary and proper for the court to consider all the circumstances surrounding the execution of the writing and the subsequent acts of the parties. *Janssen v. Muller*, 38 S.D. 611, 162 N.W. 393. The construction given by the parties themselves to the contract as shown by their acts, if reasonable, will be accorded great weight and usually will be adopted by the court.

[¶ 5] Richard served in the Air Force for twenty years. At retirement, he was eligible to receive $789 per month. A veteran who becomes disabled as a result of military service is eligible for disability benefits. 38 U.S.C. § 1131 (peacetime disability). "In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay." *Mansell v. Mansell*, 490 U.S. 581, 583, 109 S.Ct. 2023, 2026, 104 L.Ed.2d 675, 682 (1989) (citing 38 U.S.C. § 3105). Disabled veterans choose this waiver for its tax advantages because VA disability income is exempt from federal, state and local taxes. 38 U.S.C. § 3101(a). Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408, in direct response to *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). *McCarty* held federal law prohibited state courts from dividing military retirement pay. The USFSPA authorizes state courts to treat as community property "disposable retired or retainer pay[.]" 10 U.S.C. § 1408(c)(1). Yet § 1408(a)(4)(B) specifically excludes military retirement pay waived so the retiree may receive disability payments.

[¶ 6] In *Mansell*, as here, the former spouse received both military retirement pay and disability benefits. 490 U.S. at 585, 109 S.Ct. at 2027, 104 L.Ed.2d at 683. Major Mansell was required "to share his total retirement pay" with his ex-wife, including that portion of retirement pay waived to receive disability benefits. *Id.* at 585–86, 109 S.Ct. at 2027, 104 L.Ed.2d at 683. The Court found the USFSPA denies authority to state courts to treat disability payments as property when military retirement payments have been waived to receive such disability amounts. *Id.* at 594–95, 109 S.Ct. at 2032, 104 L.Ed.2d at 689. This was "one of those rare instances where Congress has directly and specifically legislated in the area of domestic relations." *Id.* at 587, 109 S.Ct. at 2028, 104 L.Ed.2d at 684. The USFSPA grants state courts the "authority to treat disposable retired pay as community property; they have not been granted the authority to treat total retired pay [which includes

disability pay] as community property." *Id.* at 589, 109 S.Ct. at 2029, 104 L.Ed.2d at 685.

We realize that reading the statute literally may inflict economic harm on many former spouses. But we decline to misread the statute in order to reach a sympathetic result when such a reading requires us to do violence to the plain language of the statute and to ignore much of the legislative history. Congress chose the language that requires us to decide as we do, and Congress is free to change it.

*Id.* at 594, 109 S.Ct. at 2036, 104 L.Ed.2d at 689. Congress has yet to change it.

[¶ 7] Following *Mansell*, several jurisdictions conformably ruled military disability retirement pay not subject to division. *See Murphy v. Murphy*, 302 Ark. 157, 787 S.W.2d 684, 685 (1990); *In re Marriage of Franz*, 831 P.2d 917, 918 (Colo.Ct.App.1992); *Fondren v. Fondren*, 605 So.2d 571, 572 (Fla. Dist.Ct.App.1992); *Jones v. Jones*, 7 Haw. App. 496, 780 P.2d 581, 584 (1989); *Bewley v. Bewley*, 116 Idaho 845, 780 P.2d 596, 597 (App.1989); *Davis v. Davis*, 777 S.W.2d 230, 232 (Ky.1989); *Harmon v. Harmon*, 617 So.2d 1373, 1377 (La.Ct.App.1993); *Keen v. Keen*, 194 Mich.App. 72, 486 N.W.2d 105, 106 (1992); *In re Marriage of Murphy*, 261 Mont. 363, 862 P.2d 1143, 1145 (1993) (VA disability benefits are personal to the retiree and are meant to compensate the retiree for the loss of working ability); *Vitko v. Vitko*, 524 N.W.2d 102, 103–04 (N.D.1994)(but stating "we need not give a broader preemptive effect to the *Mansell* holding than the *Mansell* court itself recognized in the 'precise and limited' language of a particular federal statute."); *Rothwell v. Rothwell*, 775 S.W.2d 888, 892 (Tex.App.1989); *Lambert v. Lambert*, 10 Va.App. 623, 395 S.E.2d 207, 209 (1990).

[¶ 8] Other courts have found *Mansell* inapplicable given particular language in divorce settlement agreements. In *Owen v. Owen*, 14 Va.App. 623, 419 S.E.2d 267, 269 (1992), the parties settled on a certain level of income to be paid to the wife, and the husband agreed not to take any action to reduce it. The *Owen* court said the agreement established a guaranteed level of income which did not offend the federal pro-hibition against direct assignment of the military disability pay.

We hold that federal law does not prevent a husband and wife from entering into an agreement to provide a set level of payments, the amount of which is determined by considering disability benefits as well as retirement benefits.

*Id.* 419 S.E.2d at 270. In *McHugh v. McHugh*, 124 Idaho 543, 861 P.2d 113 (App. 1993), the ex-husband's disability pay was raised and the ex-wife's payments consequently decreased after the divorce. *Id.* 861 P.2d at 115. The Court approved an increase in the percentage paid to the ex-wife from 18% to 40.37% to maintain the fixed sum she was guaranteed. This was within its discretion because a spouse may be awarded up to fifty percent of the disposable retirement pay under the USFSPA. 10 U.S.C. § 1408(e)(1). As military disability retirement pay was not touched, *Mansell*'s restriction was not violated.

[¶ 9] Here, the circuit court, after considering *Mansell*, ordered Richard to pay Marilyn, in accordance with their agreement, the equivalent of one-half his total gross annuity payments before any reduction for disability benefits. Considering the stipulation in its entirety, the court read it to reflect the parties' actual intent. Paragraph 14 states Richard will "instruct" the Air Force to pay Marilyn, which suggests Richard took personal responsibility for the amount to be paid, as opposed to simply agreeing to an order awarding her a half interest. While a property division is irrevocably fixed by the terms of the divorce decree and cannot be later modified, if indeterminate language was employed, a court may clarify its decree and the agreement it was based upon. *See Davis v. Davis*, 488 N.W.2d 425, 427 (S.D.1992). Here, the court found, "the Decree of Divorce entitles [the wife] to receive from [the husband] property valued at one-half of the gross annuity payments." The circuit court did not include the military disability payments as part of the marital property division and thus did nothing to infringe upon federal law. The court concluded the parties intended Marilyn to receive a certain monthly sum as her share of the property division,

regardless of the source. Although the original agreement provided a method by which she could directly receive payment of the husband's obligations, it did not relieve Richard from the liability he assumed under the decree if the normal retirement payments were reduced or eliminated. The circuit court explained:

> The express language of the Stipulation provides that the Plaintiff's share is a fixed amount equal to one half of the gross annuity payments. That figure is to be calculated without regard to the actual payments received by the Defendant. Furthermore, that figure is calculated without regard to reductions for any reason, including reductions for disability payments. Thus, the Stipulation allocated to the Plaintiff property with a value equal to one-half of the gross annuity payments. The Stipulation did not proceed to define that property interest any further.
>
> \*    \*    \*    \*    \*    \*
>
> The court's interpretation is also in accord with the parties' manifestation of intent contained in the express language of the Stipulation. For instance, Paragraph 8 of the Stipulation provides in essence that the parties warrant they have not decreased the economic value of the assets to be received by the other party. The warranty is extended to include future actions which could decrease the value of the other party's interest in certain assets. If such future action would occur, the receiving party is entitled to indemnification by the other party.

The opinion concluded, "Based on this court's interpretation of the Stipulation as a whole, and Paragraph 14 in particular, it is my finding that the Decree of Divorce entitles [Marilyn] to receive from [Richard] property valued at one-half of the gross annuity payments."

[¶ 10] We think it meaningful that the parties knew Richard was applying for disability benefits during the time they were negotiating their settlement; they apparently undertook to provide Marilyn an amount equal to one-half of Richard's military retirement benefit, even if the character of Richard's entitlement changed through receipt of disability payments. *Mansell's* specific holding prevents divorce courts from awarding a spouse veteran's disability payments when military retirement pay has been waived to receive such benefits. That case, however, does not preclude state courts from interpreting divorce settlements to allow a spouse to receive property or money equivalent to half a veteran's retirement entitlement. "[T]he source of payments need not come from his exempt disability pay; the husband is free to satisfy his obligations to his former wife by using other available assets." *Holmes v. Holmes,* 7 Va.App. 472, 375 S.E.2d 387, 395 (1988). As the circuit court did not award Marilyn any portion of Richard's exempt disability payments, but merely clarified its decree by interpreting the true intent of parties' settlement agreement, we uphold its decision.

[¶ 11] Lastly, Marilyn declares, the issue of attorney fees at the trial level was not addressed by the trial court. She requests a remand to consider the question. Marilyn did not file a notice of review, so the issue is not preserved and we will not address it. *Schuck v. John Morrell & Co.,* 529 N.W.2d 894, 897 (S.D.1995). Marilyn and Richard both request appellate attorney fees; their requests are supported with itemized statements of costs and services performed. *See Malcolm,* 365 N.W.2d at 866. This request has been reviewed and no appellate attorney fees are awarded. *DeVries v. DeVries,* 519 N.W.2d 73, 78 (S.D.1994) (citing *Bell v. Bell,* 499 N.W.2d 145 (S.D.1993); *Straub v. Straub,* 381 N.W.2d 260 (S.D.1986); *Malcolm,* 365 N.W.2d at 863; *Senger v. Senger,* 308 N.W.2d 395 (S.D.1981)).

[¶ 12] Affirmed.

[¶ 13] MILLER, C.J., and SABERS and GILBERTSON, JJ., concur.

[¶ 14] AMUNDSON, J., dissents.

AMUNDSON, Justice (dissenting).

[¶ 15] In order for Marilyn to receive direct payments from the Veteran's Administration she had to submit an Application for Former Spouse Payment from Retired Pay. Marilyn signed the application, which stated:

I hereby acknowledge that any payment to me cannot lawfully exceed 50 percent of the member's disposable retired pay which is gross retired pay minus deductions such as those authorized or required for income tax, Federal indebtedness, or *disability reasons;* that my payments may not exceed any lesser amount or percentage by court order; and that *any court-ordered percentage must be construed as a percentage of disposable retired pay.* (Emphasis added.)

[¶ 16] At issue in this case is whether Richard's military disability payments are property subject to division. This involves the interpretation of federal law which the United States Supreme Court has interpreted in *Mansell v. Mansell,* 490 U.S. 581, 583–94, 109 S.Ct. 2023, 2025–32, 104 L.Ed.2d 675, 681–89 (1989). Congress enacted the Uniformed Services Former Spouses' Protection Act (USFSPA), 10 U.S.C. § 1408, in direct response to *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). *McCarty* held that federal law completely preempted the application of state property law to military retirement pay. USFSPA authorizes state courts to treat as community property "disposable retired or retainer pay[.]" 10 U.S.C. § 1408(c)(1). However, § 1408(a)(4)(B) specifically excludes any military retirement pay waived in order for the retiree to receive military disability benefits from the definition of disposable retired or retainer pay.

[¶ 17] The majority contends *Owen v. Owen,* 14 Va.App. 623, 419 S.E.2d 267, 269 (1992), is persuasive. At the time of divorce in *Owen,* the husband had no disability rating. *Id.* at 268. The parties agreed to a guaranteed level of income ($1,241.47) to be paid to the wife. *Id.* The husband agreed to not take any action to reduce this level of income. *Id.* The *Owen* court said the agreement established a guaranteed level of income which did not offend the federal prohibition against direct assignment of the military disability pay. *Id.* at 269. In the present case, Marilyn and Richard's agreement stated that he was to pay her one-half of his total retirement pay, however, the agreement did not guarantee a certain level of income as in *Owen.* To hold as the majority does is redrafting the parties' agreement. This court, on prior occasions, has held that it is not a function of the court to rewrite the parties' agreements. *Pengra v. Pengra,* 429 N.W.2d 754, 756–57 (S.D.1988). *See also Moller v. Moller,* 356 N.W.2d 909, 911–12 (S.D.1984); *Girard v. Pardun,* 318 N.W.2d 137, 140 (S.D.1982).

[¶ 18] The trial court, after considering *Mansell,* stated that Richard was to pay Marilyn an amount equal to one-half of his total gross annuity payments prior to any reduction for disability payments. The clear mandate of *Mansell* does not allow such a holding. The *Mansell* court stated:

> We realize that reading the statute literally may inflict economic harm on many former spouses. But we decline to misread the statute in order to reach a sympathetic result when such a reading requires us to do violence to the plain language of the statute and to ignore much of the legislative history. Congress chose the language that requires us to decide as we do, and Congress is free to change it.

490 U.S. at 594, 109 S.Ct. at 2032, 104 L.Ed.2d at 689. To this day, Congress has not changed it. By literally construing this federal law there is only one conclusion and that is the trial court erred in dividing this exempt disability payment. The record reflects that this disability payment was the only type of payment discussed between the parties. Simply having an unfortunate result does not justify overruling the federal dictates.

[¶ 19] Based on the foregoing analysis, I dissent, and would reverse and remand for proper distribution.