Unified Judicial System

 

 
 FMB BANKSHARES, INC.
Plaintiff and Appellee, v.
DOUGLAS J. HAJEK
Defendant and Appellant. [2003 SD 103]
South Dakota Supreme Court
Appeal from the Circuit Court of The Second Judicial Circuit
Minnehaha County, South Dakota
Hon. James W. Anderson, Judge
JOHN S. THEELER of Morgan, Theeler, Wheeler, Cogley & Petersen Mitchell, South Dakota
Attorneys for plaintiff and appellee.
 
STEVEN W. SANFORD of Cadwell, Sanford, Deibert & Garry Sioux Falls, South Dakota
Attorneys for defendant and appellant
 
Argued on May 28, 2003
Opinion Filed 8/20/2003
#22604
STEELE, Circuit Judge
 
[Â¶1.] Douglas J. Hajek (Hajek) appeals a trial court judgment directing him to sell bank stock that he owns back to FMB BankShares, Inc. (FMB), his former employer.  We reverse and remand.
FACTS AND PROCEDURAL HISTORY
[Â¶2.] Hajek, a Sioux Falls lawyer with a banking background, was the sole shareholder of Bankers Resources, Inc. (BRI), a holding company.  In November 1997, Hajek negotiated a series of transactions that culminated in an agreement to merge BRI into IMB, another holding company that owned the First Madison Bank (FMB).  The purpose of the merger was to enable FMB to expand to include a Sioux Falls branch with trust services.  Hajek was to be primarily responsible for the development and management of the Sioux Falls branch.  As a result of the merger, Hajek received 1,615 shares of FMB common stock with an option to purchase additional shares.
[Â¶3.] The final agreement was negotiated primarily between Hajek and Dan A. Culey, the CEO of FMB.  The written agreement consisted of two documents, both dated December 23, 1997.  The primary document was entitled "Memorandum and Agreement," and contained the following paragraph relating to redemption of Hajek's shares of stock:
4.  Redemption of Shares 
 
(a)        Except as otherwise agreed by the parties, if 
            Hajek's employment with the Combined Organizations shall at any time be terminated, either voluntarily or involuntarily,  Hajek shall have the option to require that FMB redeem all shares held by Hajek at a price equal to the greater of a bona fide third party offer or the appraised value as determined annually for FMB's ESOP evaluation.  Hajek shall notify FMB of his exercise of this option within 90 days following the termination of Hajek's employment with the Combined Organizations.
 
[Â¶4.] The second document was an addendum entitled "Agreement."  The pertinent part of  its  preliminary statement provided:
[T]he parties hereto wish to clarify the price at which Hajek's shares of FMB BankShares, Inc. stock are to be redeemed by FMB pursuant to paragraph 4 of the Memorandum of Agreement under certain circumstances.
 
            NOW, THEREFORE, in consideration of the foregoing, it is understood and agreed as follows:
 
1.         Notwithstanding the provisions of paragraph 4 of the Memorandum and Agreement, in the event Hajek voluntarily resigns his position, or if his employment described in the Memorandum of Agreement is terminated "for cause," FMB shall redeem all of Hajek's shares received by Hajek pursuant to paragraph 4 (b)(i) [sic] at the following redemption price. .  .  ."[here followed a recital of  prices to be received  in each of the calendar years 1998 through  2002 and beyond].
 
[Â¶5.] Hajek and Culey subsequently had a falling out and Hajek resigned his employment effective January 31, 2000.  FMB initially offered to buy all of Hajek's FMB stock for $100, claiming an offset from the balance of the purchase price called for in the contract because of an alleged tort or breach of contract claim against Hajek[1]    Hajek refused the offer.  FMB then made another offer, but again for less than the contract price.  Hajek again refused.  FMB then offered the full  contract price for the stock, but Hajek still refused contending that, under the terms of the contract, FMB had no right to demand that he sell it his stock.
[Â¶6.] FMB then brought this action for a declaratory judgment.  FMB  claimed that the addendum created a mandatory redemption provision requiring Hajek to sell and FMB to buy his shares at the contract price if Hajek voluntarily resigned.  The trial court agreed and granted FMB's motion for a judgment on the pleadings.
[Â¶7.] Several issues are raised on appeal, but our ruling on the first issue is dispositive.
ISSUE
[Â¶8.] Do the contract documents, when construed as a whole, provide for a mandatory redemption of Hajek's stock by FMB?
 
STANDARD OF REVIEW
[Â¶9.] The matter under review is a matter of contract construction which is a question of law and fully reviewable.  Nelson v. Schellpfeffer, 2003 SD 7, Â¶ 7, 656 NW2d 740, 743;  Parker v. Western Dakota Insurors, Inc., 2000 SD 14, Â¶ 7, 605 NW2d 181, 184.  On appeal, this Court can read a contract without a presumption in favor of the trial court's determination and is to give effect to the unambiguous language and terms of the contract.  Cotton v. Manning, 1999 SD 128, Â¶ 15, 600 NW2d 585, 588.
Construction of the contract
[Â¶10.] In determining the proper construction of a contract, a court is to ascertain and give effect to the intention of the parties.  All of the contract provisions must be given meaning if that can be consistently and reasonably done.  Kimball Investment Land, Ltd. v. Chmela, Ltd., 2000 SD 6, Â¶ 14, 604 NW2d 289, 293; Hisgen v. Hisgen, 1996 SD 122, Â¶ 4, 554 NW2d 494, 496.  "[W]hen two or more instruments are executed at the same time by the same parties, for the same purpose and as part of the same transaction, the court must consider and construe the instruments as one contract.  It is, however, the intent of the parties that controls."  GMS, Inc. v. Deadwood Social Club, Inc., 333 NW2d 442, 444 (SD 1983) (citations omitted).  Accord Talley v. Talley, 1997 SD 88, Â¶ 22, 566 NW2d 846, 851.
[Â¶11.] The parties agree that, according to the primary document, only Hajek is given the power to demand that FMB purchase his stock in the event of his termination.  The dispute arises out of the language in the addendum.  Hajek contends that the preliminary statement in the addendum clearly amends only the price at which his stock must be purchased and that nowhere in its recitals does it grant FMB the right to demand redemption.  FMB focuses on the language in the addendum stating that "Notwithstanding the provisions of paragraph 4 of the Memorandum of Agreement.  .  .  FMB shall redeem all of Hajek's shares .  .  .  at the following redemption price."  FMB contends that this language effectively turns Hajek's stock redemption option in the primary document into a mandatory buy-sell arrangement.  We disagree with FMB's construction of this language.
[Â¶12.] The preliminary statement in the addendum sets forth the subject of the paragraph.  It clearly and unambiguously limits the subject to clarification of the price Hajek is to receive for his shares under certain circumstances.  The later language merely sets forth what the redemption price is to be under those circumstances.[2]   There is nothing whatsoever in this language granting FMB the right to demand redemption.
[Â¶13.] The language of the addendum is clear within its four corners.  It does not create buy-sell duties for FMB and Hajek.  It merely dictates the price to be paid for the stock under certain circumstances.  Hajek did not exercise his option under paragraph 4(a) of the primary agreement within 90 days following his termination of employment.  As a result, he remains the owner of the stock.
[Â¶14.] Because of our holding on this issue, we do not reach the remaining issues.  The judgment of the trial court is reversed and we remand with instructions for the trial court to enter a judgment consistent with this decision.
[Â¶15.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.
[Â¶16.] STEELE, Circuit Judge, for ZINTER, Justice, disqualified.
 



 1.            These claims were never pursued.

 2.         The language provides that "FMB shall redeem all of Hajek's shares received by Hajek .  .  .  at the following redemption price[.]"  The emphasized phrase modifies the verb "redeem."  The structure of this sentence cannot be construed to mandate that FMB must purchase Hajek's stock.