COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Elder and Annunziata
Argued at Chesapeake, Virginia


DAREN EARL BOEDEKER

                                                          OPINION BY
v.        Record No. 0900-04-1              JUDGE LARRY G. ELDER
                                                          DECEMBER 7, 2004

HEATHER ANN LARSON


            FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
                          Westbrook J. Parker, Judge

            Kenneth B. Murov for appellant.

            William C. Cowardin, Jr. (Cowardin & Kim, PLC, on brief), for
            appellee.


        In this divorce matter, Daren Earl Boedeker (husband) appeals from a ruling of the circuit

court holding that Heather Ann Larson (wife) was entitled to a portion of the military "career

status bonus" (CSB/Redux) husband elected to receive pursuant to 37 U.S.C. § 322.  On appeal,

husband contends that the parties' property settlement agreement and federal law, rather than

husband's initial concession of wife's entitlement, which he later withdrew, were controlling and

that the sums he received were post-separation income in which wife was not entitled to share.

He also contends the trial court had no basis on which to determine the amount to which wife

was entitled because he had not yet retired.  Wife opposes husband's position and seeks an award

of attorney's fees on appeal.

        We hold that both federal law and the evidence in this case supported the trial court's

decision that a portion of the Redux bonus was marital property subject to division under the

parties' agreement.  We hold further that husband may not object to the amount of the bonus

awarded to wife because he agreed to the sum awarded.  Thus, we affirm on the merits but deny

wife's request for an award of attorney's fees on appeal.

I.

BACKGROUND

The parties were married in 1986 and separated in 2002.  Husband enlisted in the United

States Navy during the parties' marriage and was on active duty at the time the parties separated.

He served in the Navy for thirteen years ten months of the parties' sixteen-year marriage.

On October 9, 2002, the parties entered into an agreement to effect, *inter alia*, their

property settlement distribution.  In that agreement, the parties represented that each "fully

disclosed [his or her] financial status, including . . . assets and liabilities of all types and agree[d]

that the terms of this Agreement are fair, just, and equitable after consideration of the financial

status of the parties."  The agreement provided as follows with respect to the parties' retirement

accounts and post-separation income:

SECTION 3.
ASSETS

\*     \*     \*     \*     \*     \*     \*

D. Additional Retirement Account Provisions.  The parties
represent that all retirement and pension types of accounts have
been disclosed.  Each has his/her own IRA account listed solely in
his/her name.  Wife shall receive a percentage of husband's
retirement pension from the U.S. Navy based on the following
calculation: 166 months/number of months of active duty
multiplied by .5.

\*     \*     \*     \*     \*     \*     \*

SECTION 5.
FUTURE EARNINGS AND ACQUISITIONS

All income, earnings, or other property received or acquired by
either party to this Agreement on or after the date of execution of
this Agreement shall be the sole and separate property of the
receiving or acquiring party.  Each party, as of the effective date of

this Agreement, does hereby and forever waive, release, and relinquish all right, title, and interest in all such income, earnings and other property except as necessary to collect any sums due hereunder in the event of default.

* * * * * * *

## SECTION 12.
## DIVORCE

It is agreed and understood that this Agreement finally settles all rights of the parties and the property jointly or individually owned by the parties. The parties agree that this Agreement shall be made a part of a final decree or judgment and such decree o[r] judg[]ment shall not conflict with the terms hereof except to the extent disapproved by the court. . . .

## SECTION 13.
## MODIFICATION

This agreement shall stop and preclude either party from making other or further demands and claims upon the other, not included herein, except that such legal action may be taken by either party as is necessary to enforce or modify the terms and provisions hereof, except that the Property Settlement provision shall not be subject to modification. . . .

On July 2, 2003, wife filed a bill of complaint for divorce and requested that the parties' separation agreement be confirmed, ratified and merged into the final decree. On October 21, 2003, the court held a hearing at which husband testified he was to receive a $30,000 military bonus, which he referred to as a "Redux bonus." Husband testified that his receipt of the Redux bonus would reduce the amount of his military retirement when he retired. Based on the parties' agreement that wife would receive a portion of his military retirement, he said wife should receive a portion of the Redux bonus "since her portion of his pension would be reduced as a result of his taking the Redux." Husband said that the formula in the parties' agreement "regarding his military pension would determine . . . wife's share of the Redux bonus." The parties' attorneys discussed the amount of wife's share and determined wife would receive 46% of the Redux bonus.

Husband received the bonus on November 30, 2003. Before husband paid wife the agreed-upon share, he changed his position. At a January 20, 2004 hearing set for entry of the final decree, husband took the position that wife was not entitled to any portion of the bonus, arguing it should be classified as income rather than retirement. Over husband's objection, the trial court entered the final decree, which provided that the court "does hereby ratify, confirm, approve, and incorporate, but not merge, into this decree" the parties' October 9, 2002 agreement. The printed portion of the decree also provided as follows:

> ADJUDGED, ORDERED and DECREED that [husband] shall pay by military allotment to [wife] FORTY-SIX PERCENT (46%) of the gross amount (before taxes) for each of the two annual REDUX installments, with the percentage having been based on the following calculation: 166 months/180 months multiplied by .5.

That provision was crossed out and the following language inserted in its place:

> ADJUDGED, ORDERED and DECREED that [husband] shall pay $4899.00 to [wife] by January 30, 2004, said sum being the first of two payments from [husband's] REDUX installments; [husband] shall make the second payment of [wife's] share of REDUX within 30 days of receipt by him of his second installment, said second payment to be forty-six Percent (46%) of the second installment before taxes are deducted and [wife] shall be responsible for the payment of taxes from her share; if [husband] retires before 20 years of service with the U.S. Navy and is required to reimburse any portion of the REDUX, [wife] must reimburse the U.S. Navy her share.

The decree also provided that the court "can reopen this matter any time for entry of Orders necessary to adjust the military retirement benefits of [husband] to comport with the written agreement of the parties." Husband's attorney endorsed the final decree "Seen and objected to: court's decision on Redux issue."

Husband then obtained new counsel, who filed a motion for rehearing on February 3, 2004. Husband's new attorney maintained that, despite husband's earlier concessions, the Redux bonus was post-separation income and that, pursuant to both the parties' agreement and federal

- 4 -

law, wife was not entitled to share in the Redux bonus. He asked the court to vacate the relevant portion of the final decree.

Wife's attorney countered that husband was bound by his earlier concession that his decision to take the Redux bonus would reduce the amount of his future retirement benefits, in which wife was entitled to share. He also argued that husband's change in position violated the agreement's implied covenant of good faith.

The trial court reserved ruling at that time but noted as follows:

> The evidence in the first hearing from [husband] was, [wife] was entitled to this [share of the Redux] because it effected [husband's] eventual retirement benefit. . . . That was the evidence in this case. So that is what I based my decision on.
>
> We then had another hearing . . . about how much she would get . . . . [Husband's attorney] and [wife's attorney] . . . came up with a figure [of] 46 percent . . . . I didn't come up with the 46 percent.
>
> The other issue was . . . taxes. . . . [T]he idea was the government took the money out before [husband] got his check. So we were operating, number one, under the testimony from [husband] that [wife] was entitled to the money, and the second was that taxes have already been paid.

By letter opinion of February 10, 2004, and subsequent order, the court denied the motion for rehearing, reasoning as follows:

> There have been three hearings relative to this issue . . . . At the October hearing, [husband] testified that his wife was entitled to a portion of the Redux payment since her portion of his pension would be reduced as a result of his taking the Redux. At the January hearing, he changed his position. It is important to note that this was the evidence heard by the Court since that evidence was the basis for the Court's ruling. At both of these hearings, both parties were represented by counsel.
>
> At the February hearing (with a court reporter present), there was no evidence taken, but there was a proffer made by [husband] with no objection from [wife]. That proffer consisted of three exhibits -- [husband's] pay stub, 37 USC Section 322, and 10 USC Section 1408.

- 5 -

> . . . [Husband's] motion to reconsider is denied. He testified [wife] was entitled to a portion of the Redux at the first hearing; his change of position and the federal statutes proffered don't change the evidence. Since he chose to accept the Redux thereby reducing her share of his pension, she is entitled to a portion of this payment.

Husband filed a notice of appeal.

## II.

## ANALYSIS

Husband contends the court's decision awarding wife a portion of his Redux bonus was error because it was not "disposable retired pay" under federal law and, thus, was not subject to division by a state court and because it was post-separation income in which wife was not entitled to share pursuant to the parties' agreement. He also contends that the amount of wife's share of any benefit could not be calculated because he had not yet retired and, thus, the denominator of the marital share formula remained unknown.

We hold that both federal law and the evidence in this case supported the trial court's decision that a portion of the Redux bonus was marital property subject to division under the parties' agreement. We hold further that husband may not object to the amount of the bonus awarded to wife because he agreed to the sum awarded. Thus, we affirm.

## A.

## FEDERAL LAW AND DIVISION OF MILITARY BENEFITS

In McCarty v. McCarty, 453 U.S. 210, 232, 101 S. Ct. 2728, 2741, 69 L. Ed. 2d 589 (1981), the United States Supreme Court held that federal law preempted state court division of military retirement pay in community property jurisdictions. "In response to the McCarty decision, Congress passed the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. [§] 1408 (hereinafter 'the Act')." Owen v. Owen, 14 Va. App. 623, 626, 419 S.E.2d 267, 269 (1992). "The major effect of [the Act] is to *permit* state courts to divide *disposable retired or*

*retainer pay* in accordance with state law." Brett R. Turner, Equitable Distribution of Property § 6.04, at 300 (2d ed. 1994) (emphases added). The Act defines "disposable retired or retainer pay" to include "the total monthly retired or retainer pay to which a member is entitled . . . less amounts which . . . are required by law to be deducted . . . , including fines and forfeitures ordered by courts-martial, Federal employment taxes, and amounts waived in order to receive [disability] compensation under title 5 or title 38." 10 U.S.C. § 1408(a)(4)(B). The Act makes no mention of the ability of state courts to divide "benefits other than disposable retired or retainer pay." Turner, supra, § 6.05, at 308.

In 1989, the United States Supreme Court considered the effect of the Act in Mansell v. Mansell, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989). It "interpreted the Act as granting state courts the power to divide military retirement pay, but specifically held the Act does not grant state courts the power to divide military retirement pay that has been waived to receive veterans' disability benefits." Owen, 14 Va. App. at 626, 419 S.E.2d at 269. Even after Mansell, "state courts may still enforce under general contract law a separation agreement which divides preempted benefits." Turner, supra, at 311 (citing Mansell v. Mansell, 265 Cal. Rptr. 227 (Cal. Ct. App. 1989) (on remand from original Supreme Court decision that held veterans' disability pay could not be divided under equitable distribution or community property principles, dividing disability benefits at issue pursuant to separation agreement), cert. denied, 498 U.S. 806, 111 S. Ct. 237 (1990)); see In re Marriage of Stone, 908 P.2d 670, 672-74 (Mont. 1995); Hoskins v. Skojec, 696 N.Y.S.2d 303, 305 (N.Y. App. Div. 1999); see also In re MacMeeken, 117 B.R. 642, 647 n.2 (Bankr. D. Kan. 1990) (stating in dicta that "this court does not find any Congressional intent in the Act to prevent or protect service members from disposing of their disposable retirement benefits as they choose," even if the same division would violate federal law if ordered by a court); White v. White, 568 S.E.2d 283, 285 n.1 (N.C.

- 7 -

Ct. App. 2002) (discussing principle in dicta).  Compare Owen, 14 Va. App. at 626, 419 S.E.2d at 269 (noting wife "*conced[ed]* that federal law prohibits former military personnel from assigning military disability pay by property settlement agreement" without analyzing merits of issue (emphasis added)).  But see Abernethy v. Fishkin, 699 So. 2d 235, 239 (Fla. 1997) (holding division of veterans' disability benefits, whether through court order or settlement agreement, [is] preempted by federal law" and citing decision of Virginia Court of Appeals in Owen as reaching same result but concluding parties can enter into property settlement agreement that awards non-military spouse set portion of military spouse's retirement pay and includes indemnification provision ensuring such payments as long as veterans' disability benefits are not source of such payments).

Here, the parties entered into a separation agreement covering the division of husband's military retirement benefits, and we examine the facts of this case in light of the agreement's contents.

B.

THE PARTIES' AGREEMENT

Virginia's equitable distribution statute provides that "[a]greements, otherwise valid as contracts, entered into between spouses prior to the marriage shall be recognized and enforceable" and that the statute does not "prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties pursuant to §§ 20-109 and 20-109.1."  Code § 20-107.3(I).  Under Code § 20-109.1, a trial court can enforce the provisions of a separation agreement that have been incorporated into a divorce decree "in the same manner as any provision of such decree."  Finally,

> [t]he court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, including the authority to . . . [m]odify any order entered in a case filed on or after July 1, 1982,

- 8 -

> intended to affect or divide any pension, profit-sharing or deferred compensation plan or retirement benefits pursuant to the United States Internal Revenue Code or other applicable federal laws . . . to revise or conform its terms so as to effectuate the expressed intent of the order.

Code § 20-107.3(K)(4).

"[P]roperty settlement agreements are contracts . . . subject to the same rules of formation, validity, and interpretation as other contracts." Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986). "If all the evidence which is necessary to construe a contract was presented to the trial court and is before the reviewing court, the meaning and effect of the contract is a question of law which can readily be ascertained by this court." Fry v. Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987).

"In reviewing the agreement, we must gather the intent of the parties and the meaning of the language . . . from an examination of the entire instrument, giving full effect to the words the parties actually used." Layne v. Henderson, 232 Va. 332, 337-38, 351 S.E.2d 18, 22 (1986); see also Southerland v. Estate of Southerland, 249 Va. 584, 589, 457 S.E.2d 375, 378 (1995). "In determining the intent of the parties, courts will generally not infer covenants and promises which are not contained in the written provisions." Pellegrin v. Pellegrin, 31 Va. App. 753, 759, 525 S.E.2d 611, 614 (2000). However,

> what is necessarily implied is as much a part of the instrument as if plainly expressed, and will be enforced as such. If the language of the instrument leaves the meaning of the parties in doubt, the court will take into consideration the occasion which gave rise to it, the obvious design of the parties, and the object to be attained, as well as the language of the instrument itself, and give effect to that construction which will effectuate the real intent and meaning of the parties.

Va. Ry. & Power Co. v. City of Richmond, 129 Va. 592, 611, 106 S.E. 529, 536 (1921) (citing Southern Ry. Co. v. Franklin & P. R. Co., 96 Va. 693, 32 S.E. 485 (1899)), quoted with approval in Pellegrin, 31 Va. App. at 759-60, 525 S.E.2d at 614.

Here, the parties' agreement specifically indicated that "all retirement and pension types of accounts have been disclosed." It specifically provided that wife was entitled to share equally in the marital portion of husband's military retirement. It made no mention of husband's entitlement to any other sort of military benefit or bonus, and it gave no indication that husband would be permitted under the terms of the agreement to reduce the amount of the retirement benefit to which wife would be entitled by relinquishing a portion of his military retirement in exchange for some other military benefit to which he alone would be entitled. Cf. Hale v. Hale, 42 Va. App. 27, 32-33, 590 S.E.2d 66, 68 (2003) (holding "agreement taken as a whole indicates that the parties intended to settle all of their existing assets, including all pension plans owned by either party" and construing agreement to include division of husband's 401(k) plan as part of provision dividing husband's "pensions" in the plural).

Based on the express terms of the parties' agreement and husband's admission that his election to receive the Redux bonus would reduce the amount of his military retirement, we hold the trial court did not err in concluding that wife was entitled to a portion of the bonus payments as "retirement" benefits rather than post-separation "income" as those terms are used in the agreement. Both federal law establishing the bonus and case law from other jurisdictions considering the proper treatment of other, similar types of military benefit payments support this result.[1]

37 U.S.C. § 322, which took effect on October 1, 1999, is the statutory mechanism establishing the bonus at issue in this case. That statute defines an optional "15-year career

_____

[1] We do not rely on husband's initial statement that wife was entitled to a portion of the bonus as a basis for concluding the bonus was retirement rather than post-separation income. The trial court also did not rely on this statement. Rather, it concluded husband's admission that his taking the bonus would reduce his retirement benefit--and, thus, wife's share of that benefit--supported the conclusion that the bonus was properly classified under the agreement as retirement rather than income. We agree with that conclusion.

status bonus" (CSB/Redux) for any "member of a uniformed service serving on active duty who" "first became a member on or after August 1, 1986," and who "has completed 15 years of active duty in the uniformed services (or has received notification . . . that the member is about to complete that duty)." 37 U.S.C. § 322(b). An eligible member may elect a bonus of $30,000 to be received in one to five installments. Id. § 322(d). A member who elects to receive the bonus must "execute[] a written agreement . . . to remain continuously on active duty until the member has completed 20 years of active-duty service" as defined elsewhere in the United States Code. Id. § 322(a). If the member "fails to complete" the remainder of the "20 years of active-duty service . . . , the person shall refund to the United States the amount that bears the same ratio to the amount of the bonus payment as the uncompleted part of that period of active-duty service bears to the total period of such service." Id. § 322(f). Further, a member who elects to receive the CSB/Redux and retires with less than 30 years of service before reaching the age of 62 is entitled to receive retirement pay at a lesser rate than a member who has not elected the CSB/Redux. 10 U.S.C. § 1409; see id. §§ 1401a, 1410; see also 37 U.S.C. § 322(e)(2) (requiring that notice to service member of eligibility for CSB/Redux "shall include . . . [a]n explanation of the effects under sections 1401a, 1409 and 1410 of title 10 that such an election has on the computation of any retired or retainer pay that the member may become eligible to receive").

Here, husband testified that his receipt of the CSB/Redux would reduce his retirement benefit, and the trial court, therefore, was entitled to conclude that he planned to leave active duty "with less than 30 years of service before reaching the age of 62," resulting in his receipt of a lesser retirement benefit than the one to which he would otherwise have been entitled. The decree also provides for the possibility of husband's retiring before completing twenty years of service, at which time 37 U.S.C. § 322(f) would require him to "refund to the United States the amount [of the Redux bonus] that bears the same ratio to the amount of the bonus payment as the

- 11 -

uncompleted part of that period of active-duty service bears to the total period of such service." If husband is required to "reimburse [the U.S. Navy] any portion of the REDUX," the decree requires wife, rather than husband, to "reimburse the U.S. Navy her share" of that portion. Even if husband elects to remain in the military long enough to receive his full retirement benefit, wife's receipt of a portion of the CSB/Redux in addition to her agreed-upon portion of the marital share of husband's regular retirement will not constitute a windfall. The federal statutory scheme makes clear that the CSB/Redux, which husband was entitled to receive after fifteen years of service, was awarded based on his first twenty years in the military. The parties were married for thirteen years ten months of that period of service, and they apparently calculated wife's share of the bonus based on that period of time. Thus, both the federal statutory scheme and the evidence supported the trial court's conclusion that the CSB/Redux installment payments were retirement benefits under the parties' separation agreement, in which wife was entitled to share pursuant to that agreement.

We are unaware of any judicial decisions determining whether CSB/Redux benefits are classified as military retirement benefits pursuant to a property settlement agreement or divorce decree effecting an equitable distribution. However, numerous courts have considered the classification of analogous types of military benefits--referred to as voluntary separation incentives (VSIs) and voluntary lump-sum special separation benefits (SSBs)--and most have classified them as retirement benefits and divided them as such. See Major Mary J. Bradley, Calling for a Truce on the Military Divorce Battlefield: A Proposal to Amend the USFSPA, 168 Mil. L. Rev. 40, 69, 127 (2001) (noting that CSB/Redux is "similar to retired pay in key aspects").

In 1991, Congress established the VSI and SSB programs "to reduce the size of the armed forces in response to the perceived diminished threat to United States' interests. . . . The

- 12 -

programs were designed to compensate career-oriented service members who had been denied a career opportunity because of circumstances beyond their control." In re Marriage of McElroy, 905 P.2d 1016, 1018 (Colo. Ct. App. 1995). Absent these incentives, the typical service person who opted or was forced to leave the military before completing twenty years of service would be wholly ineligible for retirement benefits. Bradley, supra, at 40 & n.6; see Marsh v. Wallace, 924 S.W.2d 423, 426 (Tex. Ct. App. 1996); see also Larry D. White, Note and Comment: The Uniformed Services Former Spouses' Protection Act: How Military Members are at the Mercy of Unrestrained State Courts, 9 Roger Williams U. L. Rev. 289, 289-90 (2003) (containing detailed discussion of nature and purpose of military retirement pay). Although differences exist between these types of voluntary separation benefits and "traditional military retirement[,] . . . the similarities far outnumber the differences." In re Menard, 42 P.3d 359, 364 (Ore. Ct. App. 2002). "Like retirement benefits, payments pursuant to [these programs] are based in part on the length of time a person served in the military and his pay grade during his time of service." Fisher v. Fisher, 462 S.E.2d 303, 305 (S.C. Ct. App. 1995). As a result, most courts addressing the issue have concluded that VSI and SSB payments are "in the nature of retirement pay, compensating [the service member now] for the retirement benefits he would have received in the future." Marsh, 924 S.W.2d at 425. Compare id. (distinguishing from benefits paid for *involuntary* separation from military because Congress deemed these benefits "non-earned gratuity to service member to aid readjustment to civilian life, not payment for service previously rendered").

The amount of the CSB/Redux, unlike the VSI and SSB payments, is a defined lump sum of $30,000 regardless of one's rank. Further, unlike the condition required to receive a VSI or SSB--voluntary departure from the military--a service member who elects to receive a CSB/Redux must agree to remain in the military to complete twenty years of active duty.

Despite these differences, the statutory scheme makes clear that the CSB/Redux, like the VSI and SSB payments, is "in the nature of retirement pay, compensating [the service member now] for" at least a portion of "the retirement benefits he would have received in the future." Id.; see Bradley, supra, at 127 & n.354 (noting that, unless court classifies VSI and SSB benefits as retired pay or Congress amends Act, "court order to divide retired pay as part of a property settlement agreement becomes worthless if the military member elects early retirement" and receives VSI or SSB benefits).

Whether Congress intended for CSB/Redux payments to be classified as disposable retired or retainer pay pursuant to the Act, or indeed whether it even contemplated such an issue, is not controlling, and we need not reach that issue here.[2] Instead, the terms of the parties' agreement control. The parties indicated in their agreement that they disclosed all "retirement *or pension types of accounts*" and agreed that wife was entitled to one-half the marital share of "husband's [military] retirement." (Emphasis added). Pursuant to that agreement, we hold the trial court properly classified as "husband's [military] retirement pension" that portion of husband's CSB/Redux earned while the parties were married. Thus, wife was entitled, pursuant to the agreement, to one-half the marital share of that benefit.

C.

AMOUNT OF WIFE'S SHARE OF BONUS

Husband also contends the trial court could not award a portion of the CSB/Redux benefit to wife because the marital share could not be determined prior to his retiring. We disagree.

---

[2] Without expressing an opinion on the issue, we note several courts have pointed to language in "literature distributed by the Department of Defense explaining the [VSI] and [SSB] programs states, 'The treatment of VSI or SSB is not dictated by Federal law. It will be up to the state courts to rule on the divisibility of these incentives.'" In re Marriage of Crawford, 884 P.2d 210, 212 n.5 (Ariz. Ct. App. 1994); see McElroy, 905 P.2d at 1019; Blair v. Blair, 894 P.2d 958, 961 (Mont. 1995).

- 14 -

The trial court made clear that husband and wife, through their attorneys, agreed upon the amount wife was to receive when husband took the position that she was entitled to a share of it. Assuming without deciding the terms of the parties' agreement would have prevented wife from receiving a portion of the CSB/Redux until husband actually retired, we hold the trial court was entitled to bind husband to his original agreement regarding the share of the benefit wife was entitled to receive. The court noted the parties' attorneys "discussed" the percentage of the bonus wife was to receive and "came up with a figure." It also noted the division agreed upon took into account that a portion of the $15,000 sum was withheld by the government to satisfy husband's income tax obligation on the sum.

"Husband will not be permitted to approbate and reprobate, ascribing error to an act by the trial court that comported with his representations." Asgari v. Asgari, 33 Va. App. 393, 403, 533 S.E.2d 643, 648 (2000) (upholding court's failure to divide particular loan debt repaid by husband where "counsel advised the court, during the evidentiary hearing, that he was 'not asking for any of [that particular loan] back'" but later changed his position); Anderson v. Anderson, 29 Va. App. 673, 691, 514 S.E.2d 369, 378 (2001) (holding court did not abuse its discretion in refusing to permit husband to withdraw from stipulation that parties would themselves determine classification and value of tangible personal property rather than submitting that issue to court).

D.

ATTORNEY'S FEES

On appeal, wife asks us to affirm the lower court's decision and "award [her] attorneys fees incurred." At trial, husband conceded that he would be responsible for attorney's fees for the motion to rehear if he was unsuccessful on that motion. When the trial court denied the

motion for rehearing, it awarded wife attorney's fees for that hearing.  Thus, we construe wife's request as one for an award of attorney's fees incurred on appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear.  The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  In this context, and upon consideration of the record in this case, we hold husband's position was not so unreasonable as to entitle wife to an award of attorney's fees incurred in this appeal.

III.

For these reasons, we hold the CSB/Redux bonus was a retirement benefit under the parties' agreement in which wife was entitled to share pursuant to that agreement.  The court was also entitled to bind husband to his initial position regarding the amount of the benefit to which wife was entitled.  However, on this record, we deny wife's request for an award of attorney's fees incurred on appeal.

Affirmed.