699 So.2d 235 (1997)
Richard L. ABERNETHY, Petitioner,
v.
Monica R. FISHKIN, f/k/a Monica R. Abernethy, Respondent.
No. 87957.
Supreme Court of Florida.
September 4, 1997.
*236 Daniel D. Mazar of Mead and Mazar, Winter Park, for Petitioner.
Judith E. Atkin, Melbourne, for Respondent.
KOGAN, Chief Justice.
We have for review Abernethy v. Abernethy, 670 So.2d 1027 (Fla. 5th DCA 1996)(Abernethy II), which expressly and directly conflicts with the opinion in McMahan v. McMahan, 567 So.2d 976 (Fla. 1st DCA 1990), on the issue of whether a state court may enforce the portion of a final judgment of dissolution of marriage that incorporates a property settlement agreement awarding portions of a former military member's retirement which is derived from veterans' disability benefits. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. Contrary to the opinion in Abernethy II but in accord with the McMahan decision, we hold that the United States Supreme Court decision in Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), prohibits military personnel from assigning military disability benefits by settlement agreement and that state courts are precluded from enforcing such agreements. However, we find that a state court may enforce a final judgment like the one here, which guarantees a steady monthly payment to a former spouse through an indemnification provision providing for alternative payments to compensate for a reduction in non-disability retirement benefits *237 divided as part of a property settlement agreement. Accordingly, we approve the district court's decision in Abernethy II affirming the trial court's order requiring Abernethy to pay Fishkin twenty-five percent of Abernethy's total retirement pay, but we do so for the reasons expressed herein.
Richard Abernethy and Monica Fishkin married on September 19, 1975. On May 30, 1990, while Abernethy was on active duty in the United States Air Force, Abernethy and Fishkin entered into a marital settlement agreement. This settlement agreement provided, in part, that Fishkin would receive twenty-five percent of Abernethy's Air Force retirement pay, effective upon retirement.
Fishkin later filed for divorce, and on January 15, 1992, the trial court entered a final judgment of dissolution of marriage. At the time of the dissolution, Abernethy was still on active duty. In incorporating the settlement agreement, the final judgment provided that Fishkin would receive one-fourth of Abernethy's military retirement pay pursuant to section 1408 of the Uniformed Services Former Spouses' Protection Act (USFSPA). See 10 U.S.C. § 1408 (1994).[1] Specifically, the final judgment entitled Fishkin to monthly payments comprised of twenty-five percent of Abernethy's "net disposable retired or retainer pay."[2] The final judgment also prohibited Abernethy from pursuing any course of action which would defeat Fishkin's right to receive her allotted portion of Abernethy's "full net disposable retired or retainer pay" and required Abernethy to indemnify Fishkin for any breach in this regard.[3]
Several months after the trial court entered the final judgment, Abernethy elected to voluntarily separate from the Air Force and receive benefits under the newly enacted Voluntary Separation Incentive Program (VSI), which is codified at 10 U.S.C. § 1175 (1994). As a result of this election, Abernethy began receiving and would continue to receive $8,850.52 annually for thirty-two years.[4] Fishkin thereafter filed enforcement proceedings with the trial court, contending that she should receive twenty-five percent of Abernethy's VSI benefits. The trial court granted enforcement, and the Fifth District affirmed in Abernethy v. Fishkin, 638 So.2d 160, 161 (Fla. 5th DCA 1994)(Abernethy I).
In affirming, the Fifth District found that VSI benefits qualified as "retired or retainer pay" subject to equitable distribution under the USFSPA. Id. at 162.[5] Alternatively, *238 the district court affirmed because it found that even if the USFSPA did not authorize state courts to distribute VSI benefits, the trial court's order enforcing the settlement agreement did not assign or award VSI benefits. Id. at 163. Instead, the order merely required Abernethy to pay Fishkin twentyfive percent of every VSI payment immediately upon its receipt in order to assure Fishkin a "steady monthly payment" pursuant to the terms of the property settlement agreement. Id. at 163.[6]
After Abernethy I, Abernethy waived portions of his VSI benefits in order to receive veterans' disability benefits.[7] As a result of this waiver, Abernethy began receiving $8,122.10 per year in veterans' disability benefits and $728.42 per year in VSI benefits. Fishkin alleged in a new "Motion to Determine the Amount of VSI to be Paid by Former Husband to Former Wife" that Abernethy had again violated the final judgment.[8]Abernethy II, 670 So.2d at 1029. The trial court agreed with Fishkin and ordered Abernethy to pay twenty-five percent of the amount he received each month whether such amount was in the form of VSI benefits or veterans' disability benefits. Id.
Abernethy appealed, asserting that Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), precluded the trial court from treating as divisible property the military retirement pay which he had waived to receive veterans' disability benefits. See Abernethy II, 670 So.2d at 1030. In Mansell, Mr. Mansell retired from the Air Force prior to entering a settlement agreement with his wife. 490 U.S. at 585, 109 S.Ct. at 2026-27. The ensuing settlement agreement entered by the parties provided that Mrs. Mansell would receive fifty percent of Mr. Mansell's total military retirement pay, including those portions waived so that he could receive veterans' disability benefits. Id. at 585-86, 109 S.Ct. at 2026-27. After Mr. and Mrs. Mansell divorced, Mr. Mansell attempted to modify the portion of the divorce decree incorporating the settlement agreement provision that required him to share his total retirement pay. Id. at 586, 109 S.Ct. at 2027. The trial court denied the motion, but the United States Supreme Court ultimately reversed finding the plain language of the USFSPA dispositive. Id. 586-87, 109 S.Ct. at 2027-28. The Court recognized that while the USFSPA gives state courts the authority to divide disposable *239 retired or retainer pay, section 1408(a)(4)(B) of the act explicitly excludes disability payments from the definition of disposable retired or retainer pay. Id. at 589, 109 S.Ct. at 2028-29. Thus, the Court held that the USFSPA does not grant state courts the power to treat as divisible property military retirement pay which has been waived to receive veterans' disability benefits.[9]Id. at 595, 109 S.Ct. at 2032.
The Fifth District in Abernethy II found that while Mansell precludes state courts from dividing veterans' disability benefits, it does not prohibit a veteran from assigning in a pre-divorce settlement agreement a portion of those benefits to his or her spouse in exchange for other property. Abernethy II, 670 So.2d at 1030. Additionally, the court concluded that Mansell does not prohibit a court from approving such an agreement. Abernethy II, 670 So.2d at 1030. The district court distinguished Mansell by reasoning that the only issue decided in Mansell was whether the USFSPA preempted a state court's ability to treat veterans' disability benefits as divisible property. Abernethy II, 670 So.2d at 1030. The Fifth District explained that although the parties in Mansell entered into a settlement agreement, the Supreme Court did not decide whether a state court may enforce an agreement if it encompasses veterans' disability benefits. Abernethy II, 670 So.2d at 1030; cf. In re Marriage of Stone, 274 Mont. 331, 908 P.2d 670, 673 (1995)(finding Mansell based on federal preemption rather than contract law and thus enforcing a maintenance obligation agreed to by the parties which awarded veterans' disability benefits).
In contrast, the First District in McMahan rejected the argument that a settlement agreement distinguished that case from Mansell. McMahan, 567 So.2d at 979. The district court noted that Mansell, like McMahan, involved a property settlement agreement that divided disability benefits and that the Supreme Court found the USFSPA controlling despite the agreement. McMahan, 567 So.2d at 979. The district court therefore found Mansell dispositive and held that the trial court was without authority to approve a settlement agreement awarding the former wife any portion of the former husband's military retirement pay constituting military disability benefits. McMahan, 567 So.2d at 979.
We agree with McMahan and conclude that division of veterans' disability benefits, whether through court order or settlement agreement, are preempted by federal law. The McMahan holding is consistent with Mansell and section 1408 of the USFSPA, which specifically exclude veterans' disability benefits from "disposable retired or retainer pay." Had the Supreme Court intended the result the Fifth District reached in Abernethy II, it would have held in Mansell that despite the USFSPA, the parties had to do what they had agreed to dodivide the husband's military disability benefits. Stone. 908 P.2d at 675 (Trieweiler, J., dissenting); see also In re Marriage of Strassner, 895 S.W.2d 614, 616 (Mo.Ct.App.1995) (finding federal law prohibits direct assignment of veterans' disability pay via property settlement agreement); Owen v. Owen, 14 Va.App. 623, 419 S.E.2d 267, 269 (1992) (same). Accordingly, this Court disapproves Abernethy II to the extent it is inconsistent with Mansell and McMahan.
Although we reject Abernethy II's rationale for enforcing the final judgment, we find that Fishkin is entitled to receive payments equal to the amount she was receiving before Abernethy elected veterans' disability benefits. We reach this conclusion because the final judgment in the present case does not transgress the USFSPA and Mansell, which exclude veterans' disability benefits from equitable distribution or assignment via property settlement agreement. In particular, we find there are two features of the final judgment that render it enforceable.
First, the final judgment which incorporates the parties' settlement agreement did not expressly provide for a division of disability as did the settlement agreements at issue in Mansell and McMahan. At the time of *240 the final judgment, Abernethy was still on active duty in the Air Force. He had not received a disability rating and was not yet eligible to receive veterans' disability benefits. Thus, the calculation of the amount of retirement pay awarded to Fishkin did not impermissibly include Abernethy's veterans' disability benefits. See Strassner, 895 S.W.2d at 618.
Second, the final judgment contained an indemnification provision which merely enforced the parties' property settlement agreement rather than dividing disability benefits. The indemnification provision clearly indicated the parties' intent to maintain level monthly payments pursuant to their property settlement agreement. Specifically, the provision precluded Abernethy from merging his retirement pay with another pension or pursuing any course of action which would defeat Fishkin's right to receive a portion of his "full net disposable retired or retainer pay." The provision also protected the wife's right to receive the property or the value of the property she had been allocated in the property settlement agreement by requiring Abernethy to indemnify Fishkin if he breached this provision. See Strassner, 895 S.W.2d at 618. Most significantly though, the indemnification provision achieved both of these purposes without requiring that the indemnification funds come from disability benefits. See id.; Owen, 419 S.E.2d at 269-70. Abernethy could pay Fishkin with any other available assets and, consequently, we conclude the final judgment did not violate Mansell.
Accordingly, we hold that while federal law prohibits the division of disability benefits, it does not prohibit spouses from entering into a property settlement agreement that awards the non-military spouse a set portion of the military spouse's retirement pay. Nor does it preclude indemnification provisions ensuring such payments, so long as veterans' disability benefits are not the source of such payments. For the reasons expressed herein, we therefore approve the district court's decision finding the final judgment enforceable. However, we disapprove the district court's opinion to the extent that it conflicts with McMahan. Specifically, we reject the court's finding in Abernethy II that a trial court may enforce a final judgment or property settlement agreement which violates the provisions of the USFSPA. We approve McMahan to the extent it is consistent with this opinion, but we do not find that case controlling because the terms of the settlement agreement and final judgment at issue therein differ from the terms of the final judgment at issue in the instant case.[10]
It is so ordered.
OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] In 1982, Congress passed the USFSPA which, in part, granted state courts express authority to distribute "disposable retired or retainer pay" in dissolution proceedings according to state law. See Pub.L. No. 97-252, § 1002(a), 96 Stat. 730 (1982) (codified at 10 U.S.C. § 1408(c)(1)). The USFSPA defined "disposable retired or retainer pay" as the total monthly retired or retainer pay to which a service member was entitled, less certain specified amounts. Id. The current version of the statute replaces "disposable retired or retainer pay" with the term "disposable retired pay," 10 U.S.C. § 1408(a)(4)(1994), but the change does not affect our decision.
[2] The final judgment defined "net disposable retired or retainer pay" as the "gross retired or retainer pay from the United States Air Force less federal and state income tax withholding, FICA withholding, and, if the Former Spouse is designated as the survivor beneficiary, military Survivor Benefit Plan premiums (SBP)."
[3] The specific provision in the final judgment reads:

The Member shall not merge the Member's retired or retainer pay with any other pension, and shall not pursue any course of action that would defeat the former Spouse's right to receive a portion of the full net disposable retired or retainer pay of the Member. The Member shall not take any action by merger of the military retirement pension so as to cause a limitation in the amount of the total net monthly retirement or retainer pay in which the Member has a vested interest and, therefore, the Member will not cause a limitation of the Former Spouse's monthly payments as set forth above. The Member shall indemnify the Former Spouse for any breach of this paragraph as follows. Therefore, if the Member becomes employed, which employment causes a merger of the Member's retired or retainer pay, the member will pay to the Former Spouse directly the monthly amount provided for in paragraph 22 [25 percent of the member's net disposable retired or retainer pay] under the same terms and conditions as if those payments were made under paragraph 22.
[4] Abernethy's VSI benefits were calculated using the following formula: 2.5% × final monthly basic pay × 12 months × 16 years of service.
[5] The First District found to the contrary in Kelson v. Kelson, 647 So.2d 959 (Fla. 1st DCA 1994). In addressing the conflict between Abernethy I and Kelson, a majority of the Florida Supreme Court agreed with the court in Abernethy I that VSI payments are the "functional equivalent" of retired pay. Kelson v. Kelson, 675 So.2d 1370, 1372 (Fla.1996). The five members of the majority, however, disagreed as to the reason why the settlement agreement could be enforced. Two members of the majority concluded that although federal law preempted the subject of military retirement, the trial court could enforce the settlement agreement because VSI benefits were the functional equivalent of military retirement and were thus covered by the USFSPA. Id. at 1373 (Grimes, C.J., concurring in result only). The remaining justices who made up the majority concluded that the trial court could enforce the settlement agreement without relying on federal law. Kelson, 675 So.2d at 1372. Specifically, these three justices found that the USFSPA did not mention and therefore did not cover VSI benefits. Id. The three justices further determined that without a provision that expressly displaced state law, the USFSPA did not preempt state law in this matter of domestic relations. Id. at 1373. Thus, a total of five justices approved the agreement which assigned VSI benefits.
[6] The Fifth District's alternative holding in Abernethy I took into account the final judgment provision prohibiting Abernethy from taking any action which would defeat Fishkin's right to receive twenty-five percent of his military retirement pay. 638 So.2d at 163. Justice Wells addressed this provision in his dissent in Kelson. Justice Wells indicated he would have denied jurisdiction in Kelson because he found the indemnification provision in the Abernethy/Fishkin settlement agreement distinguished Abernethy I from Kelson. Kelson, 675 So.2d at 1374 (Wells, J., dissenting). The majority in Kelson did not address the indemnification provision in the Abernethy I final judgment.
[7] To receive veterans' disability benefits, a military retiree must waive the corresponding amount of retired pay. See 10 U.S.C. § 1408(a)(4)(B) (1994); 38 U.S.C. § 5305 (1994). This waiver prevents the retiree from receiving a duplication of payments. See id. Because disability benefits are exempt from federal, state, and local taxes, there is an incentive to waive retired pay in favor of disability benefits. See Mansell v. Mansell, 490 U.S. 581, 583-84, 109 S.Ct. 2023, 2025-26, 104 L.Ed.2d 675 (1989).
[8] We note that the trial court treated this as a motion for enforcement of a property settlement agreement rather than a motion for modification of a property settlement agreement.
[9] Mansell arose out of California, a community property state, but the Supreme Court found that the USFSPA, and consequently its decision in this case, applied in both community property and equitable distribution states. 490 U.S. at 584 n. 2, 109 S.Ct. at 2026 n. 2.
[10] We note that even if we concluded the agreement in Abernethy II, like the agreement in McMahan, was unenforceable, we would handle the case differently than the court did in McMahan due to the different procedural posture of the two cases. In McMahan, the husband challenged the settlement agreement on appeal and, as a result, the district court, upon finding the settlement agreement unenforceable, could remand to reconsider the entire equitable distribution. McMahan, 567 So.2d at 979. In Abernethy II, the wife challenged the final order containing the settlement agreement by motion several years after the judgment of dissolution became final. If we had found the judgment unenforceable, the wife, in order to obtain relief, would have been required to meet the heavy burden associated with modification of an award fixed by property settlement agreement and incorporated into a judgment of dissolution. See Casto v. Casto, 508 So.2d 330, 333 (Fla.1987); McMahan, 567 So.2d at 977-78.