891 So.2d 1079 (2004)
Kevin Y. PADOT, Appellant,
v.
Brenda G. PADOT, Appellee.
Nos. 2D03-1011, 2D03-3843.
District Court of Appeal of Florida, Second District.
December 15, 2004.
Rehearing Denied February 4, 2005.
*1080 Karol K. Williams of Karol K. Williams, P.A., Tampa, for Appellant.
Jane H. Grossman of Law Office of Jane H. Grossman, St. Petersburg, for Appellee.
SILBERMAN, Judge.
In this consolidated appeal, Kevin Padot (the Former Husband) challenges orders arising from postdissolution enforcement proceedings regarding his military retirement pay and a military survivor benefit plan. In case number 2D03-1011, we affirm the "Order re Military Retirement" of November 12, 2002, except to the extent that it provides for an income deduction order, and we vacate the clarification order of February 19, 2003. In case number 2D02-3843, we reverse that portion of the Order on Motion for Rehearing of July 24, 2003, that required the Former Husband to cooperate with Brenda Padot (the Former Wife) to obtain and share the cost of a replacement survivor benefit plan.

BACKGROUND
The parties were married in 1980, and a final judgment of dissolution was entered on February 1, 1995. In the judgment, the trial court reserved jurisdiction to determine, among other things, issues of equitable distribution and alimony. On March 17, 1995, the trial court entered a Supplemental Order resolving the remaining issues. The Supplemental Order indicates that the parties agreed the Former Wife "shall be entitled to direct payment of a percentage of the [Former Husband's] military retirement or retainer pay" and that the parties agreed on a formula to determine that percentage. The percentage was subsequently computed to be 33.96%. The Supplemental Order also provided, "Neither party shall take any action which shall alter or otherwise reduce the interest of the other party in the retainer pay, retired pay, deferred compensation, or other military benefit."
The Former Husband retired from active military duty on May 1, 2000, and he received his first military retirement pay in June of 2000. As part of the retirement process, he applied for and was awarded veterans' disability payments, with the Veterans' Administration (VA) determining that he was 30% disabled. Under federal law, before the Former Husband could receive the disability benefits, he was required to waive an equal amount of his military retirement pay. See Mansell v. Mansell, 490 U.S. 581, 583, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). A waiver of retirement pay for disability benefits is common because disability benefits are nontaxable. Id. at 583-84, 109 S.Ct. 2023. The Former Husband's waiver went through in December of 2000. In April of 2001, the Former Husband became employed by the federal government in a civilian capacity as an air traffic controller, a position he had held while in the military.

FORMER HUSBAND'S WAIVER OF MILITARY RETIREMENT BENEFITS
In July 2002, the Former Wife filed a Motion to Enforce Final Judgment/Supplemental Order. She contended that the Former Husband's waiver of a portion of his military retirement pay in exchange for disability benefits operated to reduce her share of the military retirement pay, in violation of her rights under prior court orders. Additionally, she claimed that the Former Husband improperly sought to reduce a military survivor benefit plan and that the Former Husband should be required to maintain that plan for the benefit of the parties' minor child.
In the Order re Military Retirement entered on November 12, 2002, the trial court determined that the Former Husband's voluntary election to reduce his retirement pay in exchange for disability *1081 benefits worked to his benefit, at the expense of the Former Wife. The trial court concluded that the impact of the election violated the provision contained in the 1995 Supplemental Order that prohibited the parties from taking any action to alter or reduce the other party's interest in retainer pay, retired pay, deferred compensation, or other military benefit. The trial court found that the situation was inequitable and that, under Abernethy v. Fishkin, 699 So.2d 235 (Fla.1997), it had the ability to enforce the Supplemental Order "so long as no funds from the disability pool are drawn upon to fulfill the obligations" the Former Husband owed to the Former Wife. Because the Former Husband had income from his work as an air traffic controller, the trial court concluded that the Former Husband would be required to make payments to the Former Wife to fulfill the obligations of the Supplemental Order. The court ordered that payments due to the Former Wife "be computed by applying the percentage of 33.96% to the amount that the former spouse's military retirement would have been absent his voluntary reduction of those retirement dollars in favor of disability payments."
The Former Husband, relying on Mansell, contends that principles of federal preemption prohibit the result ordered by the trial court. As noted in Mansell, at the time of the divorce Major Mansell was already retired and receiving Air Force retirement pay and disability benefits. He obtained the disability benefits by waiving a portion of his retirement pay. The parties' property settlement agreement provided that "Major Mansell would pay Mrs. Mansell 50 percent of his total military retirement pay, including that portion of retirement pay waived so that Major Mansell could receive disability benefits." 490 U.S. at 586, 109 S.Ct. 2023. The state divorce court had ordered Major Mansell to pay a portion of his disability benefits directly to Mrs. Mansell, in accordance with the agreement.
The Supreme Court noted that the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, provides that "disposable retired or retainer pay" is property subject to division by state courts in divorce proceedings. Id. at 584, 109 S.Ct. 2023.[1] The Court explained:
"`Disposable retired or retainer pay'" is defined as "the total monthly retired or retainer pay to which a military member is entitled," minus certain deductions. § 1408(a)(4) (1982 ed. and Supp. V). Among the amounts required to be deducted from total pay are any amounts waived in order to receive disability benefits. § 1408(a)(4)(B).
Id. at 584-85, 109 S.Ct. 2023. The Supreme Court held "that the Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." Id. at 594-95, 109 S.Ct. 2023.
The situation in Mansell, however, is materially distinguishable from the circumstances of the present case. Here, the Former Husband was still in the military at the time of the divorce, and the parties agreed to a formula to determine the percentage of the Former Husband's "military retirement or retainer pay" to which the Former Wife was entitled. The divorce court ordered that neither party shall take any action to reduce the other party's interest in the retainer or retired pay, and *1082 the court retained jurisdiction to enforce the Former Wife's rights to her share of the benefits. The court denied "[a]ll requests for periodic and/or rehabilitative alimony" in this fifteen-year marriage.
At the time of the enforcement proceedings, in addition to receiving retainer pay and tax-free disability income, the Former Husband was employed as a civilian air traffic controller. The trial court noted that the disability pay is shielded from the Former Wife, but the court found that the Former Husband's civilian pay was a source of income that would enable him to comply with the 1995 Supplemental Order. The Order re Military Retirement specifically states, "Nothing in this Order should be read to require the former husband to pay any portion of his disability retirement income from his active military duty time over to the former wife." Rather, the order contemplates payment from a portion of the remaining military retirement benefits and the Former Husband's current civilian income as an air traffic controller. Thus, the trial court's order is distinguishable from the divorce court's order in Mansell.
The Former Husband also contends that under Mansell and 10 U.S.C. § 1408, the Florida Supreme Court wrongly decided Abernethy. In Abernethy, the parties had entered into a marital settlement agreement while the former husband, Richard Abernethy, was still on active duty. Their agreement provided that Monica Fishkin, the former wife, would receive 25% of Abernethy's military retirement pay. The final judgment of dissolution
entitled Fishkin to monthly payments comprised of twenty-five percent of Abernethy's "net disposable retired or retainer pay." The final judgment also prohibited Abernethy from pursuing any course of action which would defeat Fishkin's right to receive her allotted portion of Abernethy's "full net disposable retired or retainer pay" and required Abernethy to indemnify Fishkin for any breach in this regard.
Abernethy, 699 So.2d at 237 (footnotes omitted). Months later, Abernethy left the Air Force and began receiving military separation benefits. After an enforcement proceeding, he was ordered to pay Fishkin 25% of the separation benefits. Subsequently, Abernethy waived portions of his separation benefits in order to receive veterans' disability benefits. A second enforcement proceeding ensued.
The supreme court in Abernethy determined that federal law preempted the division of veterans' disability benefits either by court order or settlement agreement. Id. at 239. However, the court determined that Fishkin was "entitled to receive payments equal to the amount she was receiving before Abernethy elected veterans' disability benefits." Id. The court reasoned that, unlike in Mansell, there was no express provision for the division of disability benefits in the final judgment or settlement agreement. Also, an indemnification provision in the settlement agreement "clearly indicated the parties' intent to maintain level monthly payments pursuant to their property settlement agreement." Id. at 240. The indemnification provision prohibited Abernethy from "pursuing any course of action which would defeat Fishkin's right to receive a portion of his `full net disposable retired or retainer pay'" and required Abernethy to indemnify Fishkin in that event. Id. Because Abernethy could use other available assets to pay Fishkin rather than disability payments, the court held that the final judgment did not contravene Mansell. Id.
The Former Husband contends that apart from being wrongly decided, Abernethy is distinguishable because here the Former Husband retired and, at the same time, waived a portion of the retirement *1083 benefits in favor of disability benefits. Thus, he argues that the Former Wife never received a steady stream of payments that was later reduced by the waiver. He further argues that the 1995 Supplemental Order did not have an indemnification provision. The Former Husband concludes that the Former Wife is entitled only to 33.96% of his net retainer pay at the time of his retirement.
The parties specifically agreed that the Former Wife was entitled to 33.96% of the Former Husband's "military retirement or retainer pay," and the Supplemental Order provides that "[n]either party shall take any action which shall alter or otherwise reduce the interest of the other party in the retainer pay, retired pay, deferred compensation, or other military benefit." Although the order does not specifically state that the Former Husband must indemnify the Former Wife if he takes action that reduces her interest, the order gives the court continuing jurisdiction "to enforce the former spouse's rights to her share of the above-described benefits."
In Janovic v. Janovic, 814 So.2d 1096, 1101 (Fla. 1st DCA 2002), the First District stated that when a party merely "seeks to receive what is contemplated by the property settlement agreement incorporated into the final dissolution judgment," then "a trial court may order an equivalent benefit as part of an enforcement action where one spouse takes a voluntary action which defeats the intent of the parties." As in the present case, Mr. Janovic was on active duty when the consent final judgment of dissolution was entered. Less than a year later he was discharged and waived part of his retirement pay to receive disability benefits. The First District held that the subsequent enforcement order requiring Mr. Janovic to indemnify his former wife for the reduction in benefits did not violate Mansell. Id. at 1099. The court determined that the lack of an indemnification provision in a settlement agreement is not fatal. Id. at 1101.
We also note that in Johnson v. Johnson, 37 S.W.3d 892, 894 (Tenn.2001), the Tennessee Supreme Court held as follows:
[W]hen an MDA [marital dissolution agreement] divides military retirement benefits, the non-military spouse obtains a vested interest in his or her portion of those benefits as of the date of the court's decree. Any act of the military spouse that unilaterally decreases the non-military spouse's vested interest is an impermissible modification of a division of marital property and a violation of the final decree of divorce incorporating the MDA.
There, the parties' MDA provided that Ms. Johnson would receive, upon retirement, 50% of Mr. Johnson's "military retirement benefits," and after the court entered the final decree, Mr. Johnson waived part of his military retired pay to receive veterans' disability benefits, thereby reducing Ms. Johnson's share. Id. at 893-94.
We agree with the reasoning in Janovic and Johnson and conclude that the Former Wife obtained a vested interest in a percentage of the Former Husband's military retirement or retainer pay on March 17, 1995, when the trial court entered the Supplemental Order. Thus, when years later the Former Husband took the voluntary action of waiving retainer pay in order to receive disability benefits, the Former Wife's vested interest in his military retirement or retainer pay was reduced. As a result, we find no error in the trial court's conclusion "that equity requires that the former wife be made whole given the totality of the situation concerning the husband's voluntary acts and his ability to supplement and make whole the retirement benefits contemplated in the Final *1084 Judgment in favor of the former wife." Thus, we affirm on this issue.
We reject without discussion the Former Husband's alternative argument that the trial court improperly granted the Former Wife the right to share in the Former Husband's separate property. However, the Former Husband also argues, and the Former Wife properly concedes, that section 61.1301, Florida Statutes (2002), does not permit the use of an income deduction order to effectuate an equitable distribution scheme. See Motil v. Motil, 771 So.2d 1251, 1251 (Fla. 2d DCA 2000). Rather, section 61.1301 limits the use of income deduction orders to payments for alimony or child support. Id. Accordingly, we reverse that portion of the Order re Military Retirement that provides for payment by income deduction order.

JURISDICTION TO ENTER CLARIFICATION ORDER OF FEBRUARY 19, 2003
The trial court rendered its Order re Military Retirement on November 12, 2002, and its order on rehearing on January 22, 2003. Although there was no motion for rehearing directed to the trial court's order of January 22, 2003, the trial court held a telephonic conference with the parties on February 12, 2003.[2] The trial court then entered the clarification order of February 19, 2003, regarding the issue of "retroactivity." The Former Husband argues that the trial court was without jurisdiction to enter the clarification order. The Former Wife contends that the trial court properly entered the clarification order pursuant to Florida Rule of Civil Procedure 1.540(a).
Rule 1.540(a) allows the trial court to correct errors "arising from oversight or omission ... at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders." In Bolton v. Bolton, 787 So.2d 237, 238 (Fla. 2d DCA 2001), this court stated as follows:
A trial court may correct a clerical error "at any time on its own initiative" pursuant to Florida Rule of Civil Procedure 1.540(a), but judicial errors, which include errors that affect the substance of a judgment, must be corrected within ten days after entry of the judgment pursuant to Florida Rule of Civil Procedure 1.530, or by appellate review.
See also Commonwealth Land Title Ins. Co. v. Freeman, 884 So.2d 164, 29 Fla. L. Weekly D1704 (Fla. 2d DCA July 23, 2004). In Malone v. Percival, 875 So.2d 1286 (Fla. 2d DCA 2004), this court held that an addendum to a final judgment of dissolution, which purported to correct scrivener's errors, constituted an unauthorized amendment of the judgment. The addendum made several changes to the final judgment, including an extension of the time period during which child support would be paid. We concluded that the addition of the provision that extended the child support period was a substantive, not clerical, change that was not authorized by rule 1.540(a). Id. at 1288.
Here, the Order re Military Retirement provided that "all sums due and owing to the former wife are retroactive to the date of the former husband's retirement from active military service." The order on rehearing stated that the retroactive date was "the date of the former husband's re-employment as an air traffic controller," and it did not provide for any payments from the time of the Former Husband's retirement until he became employed as an air traffic controller. The clarification order provided for retroactive payments of 33.96% of the Former Husband's retirement pay from May 2000 (when he retired from the military) through November 2000 *1085 and to 33.96% of the retirement pay less the amount of the VA waiver for December of 2000 through March of 2001. The order also provided for retroactive payments without a reduction for the amount of the VA waiver beginning in April of 2001, when the Former Husband became employed as an air traffic controller.
We conclude that the clarification order, by changing the period of retroactivity, changed the substance of the prior order on rehearing. The trial court did not make the change pursuant to the procedures of rule 1.530 or rule 1.540, and the change was not an otherwise authorized clerical correction under rule 1.540. Thus, we vacate the clarification order of February 19, 2003.

SURVIVOR BENEFIT PLAN
The Former Husband's survivor benefit plan (SBP) is a military annuity that provides the beneficiary a percentage of the deceased service member's retired pay. On May 12, 2003, the Former Wife filed a motion to enforce the March 17, 1995, supplemental final judgment, alleging that the Former Husband failed to protect her right to receive continuing payments from the military, should the Former Husband predecease her, by naming someone else (his current wife) as the SBP beneficiary. In an order entered June 2, 2003, the trial court denied the Former Wife's request to require the Former Husband "to name her as the beneficiary of his Survivor Benefit Plan." On rehearing, the trial court heard testimony from an expert in military benefits regarding replacement coverage to protect the Former Wife's military benefits should the Former Husband predecease her. In the July 24, 2003, Order on Motion for Rehearing, the trial court required the Former Husband to cooperate with the Former Wife to obtain replacement SBP coverage, with the Former Husband to pay 66.04% of the premium and the Former Wife to pay 33.96% of the premium.
The Former Husband argues that the trial court erred in construing the 1995 Supplemental Order as requiring the Former Husband to elect the Former Wife as the SBP beneficiary. The Former Wife relies upon Wise v. Wise, 765 So.2d 898 (Fla. 1st DCA 2000), and Johnson v. Pogue, 716 So.2d 1123 (Miss.Ct.App.1998), to support the trial court's decision. In both Wise and Johnson, however, the final judgment specifically required the former husband to elect the former wife as beneficiary of the military SBP. The 1995 Supplemental Order contains no such directive, and in fact, it does not anywhere mention an SBP.
The Former Wife also argues that the trial court was correct based on the language of the 1995 Supplemental Order that "[n]either party shall take any action which shall alter or otherwise reduce the interest of the other party in the retainer pay, retired pay, deferred compensation, or other military benefit." Although the expert witness testified that the SBP is a military benefit, nothing in the 1995 order gave the Former Wife an interest in an SBP. Rather, the 1995 order gave the Former Wife an interest in "military retirement or retainer pay." Therefore, nothing prevented the Former Husband from changing his SBP. Accordingly, we reverse the July 24, 2003, Order on Motion for Rehearing to the extent that it requires the Former Husband to cooperate to obtain and pay for a portion of the cost for replacement SBP coverage. Based on our disposition of this issue, the Former Husband's other issues concerning the SBP are moot.

CONCLUSION
In summary, we affirm the Order re Military Retirement of November 12, 2002, *1086 except to the extent that it provides for an income deduction order; we vacate the clarification order of February 19, 2003; and we reverse that portion of the Order on Motion for Rehearing of July 24, 2003, requiring that the Former Husband cooperate to obtain and pay for a portion of the premium for a replacement SBP with the Former Wife as beneficiary.
Affirmed in part, reversed in part, and vacated in part.
CASANUEVA and DAVIS, JJ., Concur.
NOTES
[1] Since Mansell, 10 U.S.C. § 1048 has been amended to refer to "disposable retired pay," and retired pay is defined to include retainer pay; however, the amendment does not affect the result here. See 10 U.S.C. § 1408(a)(4), (a)(7) (1994); Abernethy v. Fishkin, 699 So.2d 235, 237 n. 1 (Fla.1997).
[2] Our record does not indicate who initiated the telephonic conference.