No. 119,099

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

ROSLYN MARIE BABIN,
*Appellee*,

and

NICKEY NICKLES BABIN,
*Appellant.*

SYLLABUS BY THE COURT

1.

Under the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408 (2016), state courts may treat disposable military retirement pay as marital property in domestic actions. However, federal law preempts such courts from ordering the division of military disability benefits and the distribution of any portion of those benefits to a veteran's former spouse.

2.

If any portion of a veteran's military retirement pay is reclassified as disability benefits by the Veteran's Administration, under the preemption doctrine any such reclassified portion is the veteran's exclusively and is no longer subject to a state court order of distribution to such veteran's former spouse. This is true even if the parties have agreed differently and the court has adopted such agreement. The parties cannot rely on the sanctity of contract to escape federal preemption.

1

3.

Although the district court cannot order the division of military disability benefits, it is permissible for the court to consider the financial effect of disability pay when dividing assets and ordering spousal support.

Appeal from Dickinson District Court; BENJAMIN J. SEXTON, judge. Opinion filed February 1, 2019. Reversed and remanded with directions.

*Todd A. Luckman*, of Stumbo Hanson, L.L.P., of Topeka, for appellant.

*Peter Charles Rombold*, of Hoover, Schermerhorn, Edwards, Pinaire & Rombold, of Junction City, for appellee.

Before SCHROEDER, P.J., STANDRIDGE, J., and WALKER, S.J.

WALKER, J.:  Nickey Nickles Babin and Roslyn Marie Babin originally reached a mediated property settlement agreement in their divorce, but issues arose between the parties after mediation was complete. The district court granted the parties' divorce, but litigation continued regarding the division of property and spousal maintenance. Even though Nickey had agreed to give 43% of his military disability benefits to Roslyn as part of the settlement agreement, he later argued that federal preemption prohibited the district court from dividing military disability benefits in a divorce. The district court ruled that the mediation agreement was plain and unambiguous and adopted the mediation agreement as its order. Nickey appeals from the district court's order approving a division of his military disability benefits. We concur with Nickey that the district court lacked jurisdiction to divide his military disability pay because of federal preemption, even though a property settlement agreement allowing for the division of disability pay had been reached through mediation. We thus reverse the district court's orders approving the settlement and remand the case for further proceedings.

2

FACTS

Nickey and Roslyn were married in March 1994. During all but the last few months of the marriage, Nickey was an active duty member of the United States Army. He retired on August 1, 2016.

Roslyn filed a petition for separate maintenance on September 1, 2016. In response, Nicky filed an answer and a counter-petition for divorce. Ultimately the parties agreed to treat the matter as a divorce action.

The parties entered into mediation in November 2016. At the end of mediation, the parties signed a handwritten document dated November 29, 2016, memorializing the primary terms of a property settlement agreement. In pertinent part, the document provided: "4. Military retirement, disability and any back pay divided 43% to Wife and 57% to Husband. Start 12-1-16."

The district court granted Nickey and Roslyn a decree of divorce on December 22, 2016, but the division of property was continued for a later time for two reasons: (1) Nickey was proposing an alternative to the settlement agreement's provisions for life insurance and (2) Nickey claimed that Roslyn's purchase of a new vehicle was either contrary to the agreement, or the parties did not have a "meeting of the minds" when they provided for Roslyn's postdivorce transportation in the agreement.

Nickey filed his proposed formal findings for the district court on February 2, 2017. At a hearing on the proposed findings held on February 6, 2017, Nickey came forward with another objection to the agreement. In this new argument, Nickey claimed that he did not agree to allocate 43% of his disability pay to Roslyn. In his proposed formal settlement agreement, the language indicated Roslyn was to be awarded a 43% share of his "disposable military retired pay" without reference to disability payments.

3

This was calculated to be $1,237.52 based on a net disposable retirement pay of $2,877.95. Even though it was not detailed in the mediation document, Nickey proposed that any later reduction in disposable military retired pay by a Veterans Administration (VA) disability waiver be made up to Roslyn by paying her an increase in maintenance to offset the actual amount of her loss incurred as a result of a VA waiver.

The district court reserved the issue regarding Nickey's military disability pay based on his claim that he did not agree to the division of his disability pay. The court indicated that it did not have the ability to divide Nickey's military disability pay without his consent. The issue of the division of the disability pay and/or how it would affect the allocation of other assets including maintenance payments was to be separately briefed and set for a hearing on February 28, 2017.

In her brief, Roslyn points out that Nickey had expressly agreed to allocate 43% of his military disability benefits to her at mediation on November 29, 2016. Roslyn argued that if Nickey was going to abrogate the agreement, the court should increase the agreement's provision for $800 per month in spousal maintenance to a maintenance payment in the range of $2,000 to $3,490 per month. In response, Nickey argued the court had no jurisdiction over his disability pay and the court could not consider disability pay when making an allocation of marital property. Nickey acknowledged, however, that the court could consider disability pay when making an award for maintenance. Even so, Nickey asked the court to decrease the agreement's provision for maintenance from $800 per month to a payment ranging from $626 to $688 per month, with a possible temporary award of $900 per month for a period of six months.

On February 28, 2017, the district court held an evidentiary hearing. After receiving the evidence and hearing arguments, the court ruled that the mediation agreement was plain and unambiguous and it adopted the agreement as its order. The

court specifically found that Nickey had voluntarily agreed to pay Roslyn 43% of his military disability pay.

On March 14, 2017, Nickey objected to Roslyn's proposed journal entry memorializing the February 28, 2017 hearing under Supreme Court Rule 170 (2019 Kan. S. Ct. R. 222). Three days later, on March 17, 2017, Nickey also filed a motion for reconsideration.

The journal entry of the district court's original decision was subsequently filed on April 5, 2017. In its written decision, the district court ruled that Nickey had agreed that Roslyn should receive 43% of his disability benefits in the mediation agreement, which should be enforced. The court also ruled that Roslyn would receive spousal maintenance in the amount of $800 per month as stated in the agreement. However, the district court did not specifically address Nickey's March 17 motion for reconsideration of its ruling.

Subsequently, the district court did hold a hearing on the motion for reconsideration on April 24, 2017. The court denied the motion and directed Roslyn's counsel to draw the journal entry. This was not done by her counsel, resulting in a troublesome gap in the record which was not cured until a journal entry was finally settled nearly 10 months later, after Roslyn obtained new counsel.

The next substantive event in the case occurred over eight months later. On December 29, 2017, Nickey filed a motion for relief from judgment based in part on the United States Supreme Court's holding in *Howell v. Howell*, 581 U.S. ___, 137 S. Ct. 1400, 197 L. Ed. 2d 781 (2017). On February 12, 2018, the district court held a hearing at which it denied Nickey's new motion for relief from judgment and settled the dispute concerning the old journal entry of its denial of Nickey's March 17, 2017 motion for reconsideration. The court once again reiterated its finding that the parties had contracted, by way of mediation, to a division of Nickey's military disability pay. This was

memorialized by a written order filed on February 21, 2018, which denied both Nickey's motion for reconsideration and his motion for relief from judgment.

Nickey filed a timely notice of appeal from the district court's rulings.

ANALYSIS

*Divisibility of military disability benefits*

Nickey first argues that the district court erred by awarding 43% of his military disability benefits to Roslyn. Nickey claims that under federal law his military disability benefits are not divisible marital property subject to the jurisdiction of the Kansas courts even in the event that the recipient spouse agreed to the division.

The primary issue is whether federal law preempts enforcement of the portion of the parties' property division that divides Nickey's disability compensation. The matter of division of military pay is an issue of federal preemption and jurisdiction. Whether jurisdiction exists is a question of law over which our review is unlimited. *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609, 244 P.3d 642 (2010). We also exercise unlimited review over whether a federal statute preempts state law. *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 294, 255 P.3d 1186 (2011).

Under 10 U.S.C. § 3911 et seq. (2016), "[m]embers of the Armed Forces who serve for a specified period, generally at least 20 years, may retire with retired pay." *Mansell v. Mansell*, 490 U.S. 581, 583, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989). In addition, federal law also provides that "[v]eterans who became disabled as a result of military service are eligible for disability benefits[,]" which are calculated "according to the seriousness of the disability and the degree to which the veteran's ability to earn a

6

living has been impaired." 490 U.S. at 583. Federal law prevents a veteran from receiving both retired pay and disability benefits. Thus, "[i]n order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay." 490 U.S. at 583. Accordingly, if the percentage of a military veteran's disability increases and his or her corresponding disability benefits increase, his or her retirement pay will go down in a corresponding amount. Because military disability pay is exempt from federal, state, and local taxation, it is common for retirees to waive their retirement pay in favor of disability pay. 490 U.S. at 583-84.

Congress sought to protect veterans' benefits to ensure that they provide support for veterans, with the goal of encouraging participation in the military. See *McCarty v. McCarty*, 453 U.S. 210, 234, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981) (discussing federal interests in area of military retired pay). But Congress also protected spouses of veterans by establishing provisions to make sure that they were compensated in divorce. See *Mansell*, 490 U.S. at 587-89. The federal law governing these issues is known as the Uniformed Services Former Spouses' Protection Act (Act), 10 U.S.C. § 1408 (2016).

Congress passed the Act after the United States Supreme Court held that the federal laws then governing military retired pay preempted state courts from treating military retired pay as community property. *Mansell*, 490 U.S. at 584 (recognizing that the Act was a "direct response" to the holding in *McCarty*); *McCarty*, 453 U.S. at 232-35. The Act changed the law and provided that state courts can treat disposable retirement pay as marital property. *Mansell*, 490 U.S. at 583. But in *Mansell*, the Supreme Court recognized that federal law preempts state courts from ordering the division of military disability benefits and the distribution of these benefits to a veteran's former spouse. 490 U.S. at 594-95.

The Act "presents one of those rare instances where Congress has directly and specifically legislated in the area of domestic relations," an area of the law generally left to the states. 490 U.S. at 587. The preemption doctrine is rooted in the Supremacy Clause, which states that the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby." U.S. Const., art. VI, cl. 2. Congressional intent is the ultimate touchstone when determining if state action is preempted by federal law. *Gade v. National Solid Wastes Management Ass'n.*, 505 U.S. 88, 96, 112 S. Ct. 2374, 120 L. Ed. 2d 73 (1992).

Seven years after the passage of the Act, the United States Supreme Court interpreted the Act in a case involving a marriage dissolution decree that effectively divided a veteran's disability compensation as part of a property settlement. *Mansell*, 490 U.S. at 585-87. In the property settlement agreement, the veteran spouse agreed to pay 50% of his total military retirement pay to his former spouse—including the portion that had been waived—so that he could receive disability benefits. The veteran spouse sought modification of the decree, arguing that the Act protected his receipt of disability compensation, but the California courts concluded that the Act did not preempt state community property law. The United States Supreme Court reversed, holding that the Act preempted state law and concluding that the Act "does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." 490 U.S. at 594-95. The Court noted that a state court's authority under the Act "is both precise and limited." 490 U.S. at 588.

The *Mansell* Court noted the harsh result its ruling would have on some former spouses of veterans:

> "We realize that reading the statute literally may inflict economic harm on many former spouses. But we decline to misread the statute in order to reach a sympathetic result when such a reading requires us to do violence to the plain language of the statute

and to ignore much of the legislative history. Congress chose the language that requires us to decide as we do, and Congress is free to change it." 490 U.S. at 594.

The Act classifies military retirement pay as disposable retired or retainer pay, but the statute does not include military disability benefits within the definition of disposable retired or retainer pay. Thus military disability benefits cannot be classified as marital property subject to division and are instead treated as the retiree's separate property. See *In re Marriage of Pierce*, 26 Kan. App. 2d 236, 240, 982 P.2d 995 (1999) (state district courts have no jurisdiction over military disability benefits).

In *Pierce*, the parties prepared a property settlement agreement that gave the nonmilitary spouse a certain percentage of the military retirement benefit. But the agreement did not specify that the spouse would obtain a certain amount of money per month or that the military retirement pay could not be converted to disability pay. At a later date, the military spouse had his retirement pay fully converted to disability benefits, denying the other spouse any retirement benefits. The former spouse filed a motion which would have modified or amended the original property settlement agreement, which was denied by the district court. She then appealed to the Court of Appeals. 26 Kan. App. 2d at 237-38. A panel of this court considered the United States Supreme Court's rulings in *McCarty* and *Mansell*:

> "*Mansell* makes it perfectly clear that the state trial courts have no jurisdiction over disability benefits received by a veteran. The trial court in this case cannot order Douglas to change the payments back to retirement benefits, and it cannot order him to pay his disability benefits to Priscilla. We conclude the court may not do indirectly what it cannot do directly." *Pierce*, 26 Kan. App. 2d at 240.

The Court of Appeals noted there was no relief possible for the nonmilitary spouse in the case because the agreements and orders did not forbid the change in benefits or indemnify her for the same. 26 Kan. App. 2d at 240-42. The court also expressly rejected

cases from other jurisdictions that asserted that the change in disability pay was a breach in contract, finding no evidence in the record that the military spouse intentionally breached the settlement agreement. 26 Kan. App. 2d at 242-43.

Similarly, in *In re Marriage of Martin*, No. 106,912, 2013 WL 1149674 (Kan. App. 2013) (unpublished opinion), a veteran agreed to compensate his former spouse in any amount that his retirement pay was reduced due to disability. Although the state courts cannot generally divide disability pay, in this instance the recipient former spouse argued that it was divisible because the veteran had expressly agreed to do so in a settlement agreement. The district court ruled the veteran spouse in contempt for failure to turn over additional amounts of his disability pay. 2013 WL 1149674, at *7. A panel of this court remanded the matter, holding that the district court failed to take 10 U.S.C. § 1408 and *Mansell* into account regarding jurisdiction. The court held that "the district court made an error of law in not considering and making appropriate conclusions of law regarding the jurisdictional implications of this federal statute." 2013 WL 1149674, at *8; see also *In re Marriage of Dashiell and Eidemiller*, No. 95,086, 2006 WL 2563304, at *2 (Kan. App. 2006) (unpublished opinion) (no jurisdiction to order division of military disability benefits).

Since *Mansell* resulted in a harsh result for some former spouses of veterans, throughout the years many state courts have found ways to distinguish the facts of cases from those in *Mansell*. For example, the Virginia Court of Appeals determined that an agreement to provide a certain percentage of retirement pay to a former spouse—along with an indemnification provision—allowed the district court to enforce the agreement by ordering payment from other sources other than disability pay. See *Owen v. Owen*, 14 Va. App. 623, 627-28, 419 S.E.2d 267 (1992). The Idaho Court of Appeals determined that a property settlement agreement that fixed a certain dollar amount from military pay can be enforced even if the disability pay later reduces the retirement pay as long as the court orders the payment from other sources. *McHugh v. McHugh*, 124 Idaho 543, 545, 861

10

P.2d 113 (Ct. App. 1993). And in *Abernathy v. Fishkin*, 699 So. 2d 235, 239 (Fla. 1997), the Florida Supreme Court held that even though *Mansell* prohibited the district court from dividing disability benefits, it did not prohibit the voluntary assignment of such benefits under the terms of a settlement agreement. But see *Mallard v. Burkart*, 95 So. 3d 1264, 1272 (Miss. 2012) (federal preemption prevents distribution of military disability benefits under property settlement agreement).

In response to the state courts' differing interpretations of *Mansell*, the United States Supreme Court readdressed the preemptive effect of the Act in *Howell*, 137 S. Ct. 1400. In *Howell*, the divorce decree awarded 50% of a veteran's future military retired pay to his former spouse. As is often the case, years later the veteran waived a portion of his retired pay in favor of disability benefits, thereby reducing the former spouse's award. The nonmilitary former spouse sought to enforce the decree in order to restore the amount of her share of the veteran's retired pay. The Arizona court concluded that the former spouse had received a vested interest in the original decree and ordered the veteran to make up the difference lost due to the disability waiver. The Arizona court ruled that federal law did not preempt the court's order.

The United States Supreme Court reversed the Arizona court, holding that a state court may not order a veteran to indemnify a divorced spouse for the loss in the divorced spouse's portion of the veteran's retirement pay caused by the veteran's waiver of retirement pay to receive service-related disability benefits. 137 S. Ct. at 1405-06. The Supreme Court stated that the district court could not vest the former spouse with that which it lacked the authority to give. 137 S. Ct. at 1405. The *Howell* Court also specifically rejected the argument that a nonmilitary spouse can be reimbursed or indemnified if disability pay is obtained, as these rulings displace the purpose of the statute and are an obstacle to the purposes and objectives of Congress. 137 S. Ct. at 1406.

11

Although *Howell* involved a divorce decree and not a property settlement agreement, the Supreme Court expressly stated that it was abrogating several cases dealing with property settlement agreements. And significantly, the Court impliedly endorsed *Mansell* and its restriction on using a property settlement agreement to divide pay. The Court overruled cases relying on the sanctity of contract to escape federal preemption. 137 S. Ct. at 1404-05.

Roslyn's contentions rely almost exclusively on contractual arguments. She asserts that Nickey agreed to give her 43% of his disability benefits as part of a mediation agreement, and he could voluntarily allocate a portion of his disability payments to her. She asserts it is "no more objectionable than it would be if he decided to use that disability payment to buy groceries and gas at the local convenience store." Roslyn asserts that "[o]nly if the holding in *Howell* is construed so as to prevent a service member from spending his or her disability pay as he or she deems fit, would the action of the trial court below be subject to reversal." Although creative, we believe this argument does not follow the intent of Congress, which is to ensure that the disability benefit goes to the support of the veteran, not to the support of others.

We are convinced that the division of Nickey's disability compensation—even through a mediated settlement agreement—is simply not permitted by federal law. The district court lacked jurisdiction to order such a division of benefits, especially over Nickey's objection to the division of property. The district court's ruling that Nickey contracted away his right to his full disability pay must be reversed.

The Act does not allow for the treatment of disability compensation as marital property, and it specifically excludes from marital property those amounts of retired pay that are waived in favor of disability compensation. 10 U.S.C. § 1408(a)(4)(A). In *Howell*, the Supreme Court held that state courts "cannot 'vest' that which (under governing federal law) they lack the authority to give." 137 S. Ct. at 1405. Military

disability compensation is not among the military benefits that may be divided as marital property, and the district court lacked jurisdiction to enforce such a division of property.

*The possibility of indirect relief*

For his second argument, Nickey asserts that this court has no authority to indirectly divide his military disability benefits. Nickey appears to be seeking an advisory opinion by raising this issue, as there is no asserted error by the district court that can be reviewed by this court. However, for the guidance of the district court on remand, we believe some analysis may be appropriate.

Because federal law precludes state courts from dividing military disability compensation as marital property, the portion of the judgment dividing Nickey's disability compensation is unenforceable. The question is whether we should merely vacate that portion of the property division or if remand is appropriate for the district court to reconsider the equitable division of property.

In *In re Marriage of Bahr*, 29 Kan. App. 2d 846, 849, 32 P.3d 1212 (2001), the Court of Appeals found that a veteran spouse's disability benefits can be considered when calculating the need for maintenance. In this case, the district court withheld its ruling on maintenance as it considered the federal preemption question regarding Nickey's disability benefits. Although clearly the district court cannot divide any of Nickey's disability payments, it is permissible for the court to consider the financial impact of disability pay when dividing assets and ordering spousal support.

> "We recognize, as we recognized in *Mansell*, the hardship that congressional pre-emption can sometimes work on divorcing spouses. [Citation omitted.] But we note that a family court, when it first determines the value of a family's assets, remains free to take into account of the contingency that some military retirement pay may be waived, or, as the petitioner himself recognizes, take account of reductions in value when it calculates

13

or recalculates the need for spousal support. [Citations omitted.]" *Howell*, 137 S. Ct. at 1406.

So there is nothing in the federal law that prevents state courts from considering disability pay in dividing other assets.

We note that in his proposed findings to the district court Nickey recognized that there might be a reduction in regular military pension benefits if the VA granted him a disability waiver, and in fact proposed that "the actual reduction of any portion of [Roslyn's] 43% share shall be . . . denominated as maintenance payable by [Nickey] to [Roslyn]." On appeal, Nickey now asserts that the district court's award of spousal maintenance cannot be reconsidered because Roslyn did not file a cross-appeal. But spousal maintenance was reserved by the court to be considered as part of its ruling on the division of disability benefits. Because the district court's order is being vacated, we hold that the district court is free to reconsider the award of spousal maintenance on remand.

Here, the district court erroneously ruled it could enforce the settlement agreement regarding Nickey's disability payments. In so ruling, it chose the agreed-upon amount of maintenance of $800 per month. On remand, the district court is free to reconsider its ruling on spousal maintenance in its determination of an equitable division of property. See *In re Marriage of Bahr*, 29 Kan. App. 2d at 849.

Reversed and remanded with directions.

14